Ramona JACKSON, Appellant,

v.

WILLIAMS BROTHERS CONSTRUCTION CO., INC. and Ismael Alonso, Appellees.

No. 01–09–00920–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 18, 2011.

Gerardo Cantu, Steven E. Norris, Norris & Cantu, LLP, Houston, TX, for Appellant.

Charles W. Lyman, Barker Lyman, P.C., John B. Wallace, Barker, Lyman, Twining, Weinberg & Ferrell, P.C., Houston, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

Appellant Ramona Jackson sued appellees Ismael Alonso and Williams Brothers Construction Company for injuries she sustained in an automobile accident. On appeal, Jackson contends that the trial court erred in denying her timely request for a jury shuffle under Rule 223 of the Rules of Civil Procedure and in setting

aside its order for new trial and reinstating the judgment. Jackson also argues that the evidence was factually insufficient to support the jury's finding that she was negligent and 60% responsible. We affirm.

## Background

Ramona Jackson was a bus driver for the Metropolitan Transit Authority of Harris County. Her bus collided with a Williams Brothers dump truck driven by Ismael Alonso. The collision occurred near Metro's Northwest Transit Center as Jackson and Alonso were both preparing to turn left onto Post Oak Road. The bus sustained damage to its right-front fender and side-view mirror. The dump truck sustained only minor scratches to its left-rear tire. Jackson's neck, back, and right arm were injured in the accident.

At trial, Jackson testified that she pulled out of the transit center traveling westbound on Old Katy Highway. She stopped at a red light in the left-turn lane behind four other vehicles. When the light changed, Jackson took her foot off the brake pedal and slowly moved forward. Jackson testified that in her peripheral vision she noticed Alonso attempting to enter her lane. She stated that Alonso was in the adjacent lane when he "zoomed" by her and "all of a sudden made a turn over into the [left-turn] lane." Jackson "panicked," grabbed the steering wheel, and hit the brakes. She testified that she "was blowing [the] horn trying to ... let [Alonso] know that he was going to hit [her]," but he did not respond to the honking and continued to come into her lane. Jackson stated that the left-rear end of Alonso's truck struck the right-front corner of the bus, knocking the bus into oncoming traffic. On impact, her right arm fell though the center of the steering wheel, jerking her body and causing her

injuries. Jackson testified that the impact also moved the right side-view mirror forward and damaged the right-front fender of the bus.

Alonso testified that he was driving an 18–wheel dump truck on Old Katy Road. He stated that he moved quickly into the left-turn lane in order to make a left turn on Post Oak Road and stopped at the red light. Alonso did not feel the impact of the collision with the bus, and he was not aware that the accident had occurred until Jackson tapped on his window and told him that his truck had hit her bus. He claimed that he was already stopped in the left lane, waiting to turn left when Jackson changed lanes and ran into him. Alonso testified that he saw Jackson leave the transit center and that she was "coming in the opposite direction of the traffic" when she drove into the left turn lane. He also stated that "[he] was in the line to make a left hand turn and [Jackson] wanted to beat [him] to the lane." Williams Brothers stipulated that Alonso was acting in the course and scope of his employment when the accident occurred.

Officer N. Roberts of the Metro Police Department investigated the accident. When he arrived at the scene, he assessed the damage to the vehicles and took statements from Jackson and Alonso. He noted that the area was under construction and drew a diagram that documented the lane configuration at the time of the accident. There were two lanes for westbound traffic and a left-turn lane. There was also a lane for buses coming out of the transit center, which directed them onto Old Katy Road. Roberts testified that there was a wide unmarked area of pavement on which buses coming out of the transit center could drive. Based on his investigation, he determined that Jackson turned out of the transit center onto Old Katy Road into the unmarked area of

pavement. She drove on the unmarked pavement until the road markings indicated that it was a turn lane. Roberts testified that Jackson was lawfully traveling in this lane, but he also testified that he did not know whether the unmarked area was a designated lane of travel. He concluded that Alonso was driving westbound and entered the turn lane in front of Jackson where the pavement markings indicated that westbound traffic could move into the lane. Because Jackson was already in the lane, Roberts concluded that she had the right-of-way and that Alonso failed to yield before entering the lane. On cross-examination, however, he agreed with defense counsel's statement that Alonso was following the road markings.

Eugene Moore, the corporate representative for Williams Brothers and Alonso's supervisor, testified that the company sent its own accident investigator to the scene. The employee, who did not ordinarily investigate accidents, was instructed to draw a sketch of the vehicles, record information about the vehicles and drivers, and take pictures of the vehicles and any damage. Moore reviewed the photographs and notes taken by the accident investigator. He reported that Jackson claimed the dump truck hit her bus and that Alonso disputed Jackson's version of the events. Moore agreed, however, that it was physically impossible for Alonso's version of the facts to be true because the bus's side-view mirror had been knocked forward by the impact.

Jackson sued for negligence, alleging that Williams Brothers was vicariously liable for Alonso's negligence. Alonso and Williams Brothers argued that Jackson's negligence was the sole cause of the accident. The trial court's charge submitted questions to the jury on both Jackson's and Alonso's negligence, and it asked the jury to assign a percentage of responsibility to each party it found negligent. Both Jackson and Alonso were found negligent, and the jury assigned 60% responsibility to Jackson and 40% to Alonso.

The trial court entered a take-nothing judgment, and Jackson filed a motion for new trial. The trial court granted her motion "in the interest of justice and fairness" and set aside the judgment. The case was called to trial for the second time on July 20, 2009. On that day, Alonso and Williams Brothers moved that the trial court vacate the order granting new trial and reinstate the judgment on the grounds that the Texas Supreme Court's July 3, 2009 holding in *In re Columbia Medical Center of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204 (Tex.2009), required the court to give a reasonably specific justification for granting the motion for new trial. Given the passage of time, the trial court was unable to provide a reason for granting the new trial, so it set aside the order and rendered judgment in favor of Alonso and Williams Brothers. Jackson filed a second motion for new trial, which the trial court denied.

Jackson appeals, arguing that the trial court erred in denying her timely request for a jury shuffle and in setting aside the order granting a new trial. She further contends that there is insufficient evidence to support the jury's finding that she was negligent and its assignment of 60% of the proportionate responsibility to her.

## Analysis

### I. Jury shuffle

In her first issue, Jackson argues that the trial court erred in denying her request for a jury shuffle. The trial court announced that voir dire would begin when the attorneys received the juror information sheets. The court also indicated that it would deny a shuffle if it were requested

after the attorneys received and looked at the cards. The attorneys reviewed the juror information cards for approximately 15 minutes. After reviewing the cards but before the jury entered the courtroom for the first time, Jackson's attorney requested that the panel be shuffled. The trial court denied the request, and the panel was seated for questioning. Jackson argues that her request was timely and that the court's ruling was erroneous.

Appellees do not assert that the trial court was correct to deny the shuffle; accordingly, we assume without deciding that the jury shuffle was erroneously denied. Nevertheless, to obtain relief on appeal, Jackson must demonstrate harm resulting from the error. *See* TEX.R.APP. P. 44.1(a). We will not reverse a judgment on appeal on the ground that the trial court made an error of law unless we conclude that the error complained of probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the appeal. *Id.* Jackson's theory of how she was harmed by lack of a shuffle is that "there was a strong likelihood" that a shuffle would have resulted in a jury that included another person who was more acceptable to her, thus freeing her to use a peremptory strike on another juror she had unsuccessfully attempted to strike for cause. She also contends that the lack of jury shuffle makes it "difficult to determine the numerical sequence the shuffled jury would have had," thereby preventing her from properly presenting the issue on appeal.

Relying on *Cortez v. HCCI–San Antonio, Inc.*, 159 S.W.3d 87 (Tex.2005), Jackson contends that we should presume harm and reverse the judgment. She argues that if the court had granted her request to shuffle the jury, "there was a strong likelihood that [a more preferable juror] would have had a lower number on

the venire panel and would have been chosen as a member of the petit jury." Williams Brothers and Alonso contend that we should apply a traditional harm analysis. They argue that we cannot reverse the judgment under Rule 44.1(a) because Jackson has not demonstrated that the denial of the jury shuffle affected the randomness of the jury.

In *Rivas v. Liberty Mutual Insurance Co.*, 480 S.W.2d 610 (Tex.1972), a trial court clerk prepared the original general jury trial list from a random ordering method that did not technically conform to Rule 223 because "the names were not placed on the panel list in the order in which they were drawn from the jury wheel." 480 S.W.2d at 611. Instead, "the general jury panel was listed in the order in which the letters of summons were collected from the prospective jurors at random by the bailiff." *Id.* The trial court refused a request to shuffle. *See id.* In its analysis, the Texas Supreme Court observed that "the listing and reshuffle provisions of Rule 223 are designed to insure a random selection of jurors." *Id.* at 612. Accordingly, the Court held that the trial court's refusal to shuffle did not raise an inference of probable harm because it did not affect the randomness of the jury. *Id.*

■ In light of Rule 223's purpose of ensuring a random selection of jurors as explained in *Rivas*, we do not agree that harm should be presumed under the circumstances of this appeal. *Cortez* held that when a party has preserved error regarding the denial of a motion to strike a juror for cause, harm may be presumed from the participation of that objectionable juror because "[n]o one except the jurors themselves knows exactly what transpires in the jury room; we know only the verdict." *See Cortez*, 159 S.W.3d at 91. But Jackson does not complain about (and did not preserve error about) the effects of

participation by any particular juror who should have been excluded. If the ordinary procedure for preserving error relating to a particular juror had been followed, any such error could have been remedied by the trial court. *See id.*

■ Instead, Jackson complains only that she *did not get a new random order* from which to pick the jury. The exclusion of particular jurors is not, however, the purpose or even the necessary effect of a jury shuffle. Rule 223 does not bestow upon a litigant the right to have a particular person seated on the jury or to have a particular person fall within the strike zone. *See Wells v. Barrow,* 153 S.W.3d 514, 516–17 (Tex.App.-Amarillo 2004, no pet.). While litigants play a role in excluding prospective jurors who are biased, prejudiced, or otherwise disqualified from jury service, the statutes and rules designed to ensure that a party's right to a jury trial are preserved do not include the right to select specific jury members. *See* TEX. GOV'T CODE ANN. § 62.105 (West 2005) (disqualification of jurors); TEX.R. CIV. P. 229; *see also Wells,* 153 S.W.3d at 516–17 (distinguishing right to jury trial from right to have particular person serve on jury).

There is *no inference of probable harm* in the mere denial of a jury shuffle when the original order was random. *See Rivas,* 480 S.W.2d at 611–12. Jackson does not complain that the original order of the venire panel was not random, so we cannot presume harm based on any failure of the essential purpose of Rule 223. The *Cortez* rationale of presumed harm does not apply to this case because there is no identifiable and objectionable juror who was erroneously allowed to participate in jury deliberations under circumstances such that the juror's influence on the outcome is unknowable. We therefore cannot presume harm arising from the denial of a jury shuffle solely on the basis of the participation of a juror as to whom no valid legal challenge was preserved.

■ Under the traditional harm analysis, Jackson is required to show that violation of Rule 223 "probably caused the rendition of an improper judgment" or "probably prevented [her] from properly presenting the case." *See* TEX.R.APP. P. 44.1(a). The court in *Carr v. Smith,* 22 S.W.3d 128, 135 (Tex.App.-Fort Worth 2000, pet. denied), adopted a "relaxed" harmless error standard of review to be applied when the trial court erroneously grants a party's request to shuffle after the panel learns substantive, case-specific information about the panel's composition. Reasoning that " '[t]he necessity to prevent the subtle erosion of the standard of the jury system' " does not require the appellant to show a specific injury, the court held that reversal is warranted if the appellant demonstrates that the error caused the trial to be "materially unfair." *Carr,* 22 S.W.3d at 135 (quoting *Mendoza v. Ranger Ins. Co.,* 753 S.W.2d 779, 781 (Tex.App.-Fort Worth 1988, writ denied)). While the relaxed harm analysis does not require a specific showing of prejudice or harm, "it [does] require[ ] some showing that the randomness of the jury has suffered." *Id.* at 136.

We conclude that Jackson has failed to demonstrate harm under either the traditional harm analysis or the relaxed harm analysis because she has not shown that lack of a shuffle affected the randomness of the jury. Instead, Jackson's only argument that she was harmed by the trial court's refusal to shuffle the jury is that:

> If there had been a jury shuffle … there was a strong likelihood that [a more preferable juror] would have had a lower number on the venire panel and would have been chosen as a member of the petit jury, and that [Jackson] would

have been able to use a peremptory challenge against [two less preferable jurors who were seated on the panel] or others.

Jackson does not argue that the panel was not random at the outset, nor does she contend that the trial court's error in refusing the shuffle made the panel less random (if that is even theoretically possible). The error therefore has not been shown to have probably caused the rendition of an improper judgment. *See Rivas,* 480 S.W.2d at 612. Jackson does not argue that the error made the trial materially unfair, and the record does not suggest that it did. *See Carr,* 22 S.W.3d at 135–36.

Jackson also contends that the lack of a shuffle prevented her from properly presenting the error on appeal. *See* Tex. R.App. P. 44.1(a). She argues that the lack of a shuffle makes it difficult to determine the order in which the prospective jurors would have been seated had a shuffle occurred. As discussed above, the purpose of the jury shuffle rule is to ensure a random selection of jurors. *Rivas,* 480 S.W.2d at 612. Harm therefore would result from the wrongful denial of a jury shuffle only if the original order were not random. But Jackson does not argue that the jury was not random at the outset, and therefore she has demonstrated no harm. This analysis would not change even if Jackson could present evidence of the presumably random juror order that would have resulted if a jury shuffle had been permitted. She therefore has not been prevented from properly presenting the error on appeal.

█ A procedural error in selecting a jury is not a fundamental constitutional error immune from harmless error analysis. *See Rivas,* 480 S.W.2d at 611–12; *Wells,* 153 S.W.3d at 518. The harmless error standard of review has a long history in Texas jurisprudence, *see, e.g.,* Robert

W. Calvert, *The Development of the Doctrine of Harmless Error in Texas,* 31 Tex-as. L. Rev. 1 (1952), and serves important policy interests of judicial efficiency by constraining appellate courts' authority to order new trials to those circumstances in which the substantial rights of the litigants have been affected by the error. *See, e.g.,* Tex.R. Civ. P. 434, general commentary (1966) (discussing origin and purpose of harmless error standard) (superseded by Tex.R.App. P. 44.1 (1997)); W. Wendall Hall, *Hall's Standards of Review,* 42 St. Mary's L.J. 1, 245–46 (2010). Accordingly, assuming without deciding that an error occurred in this case, Jackson has not presented grounds for a reversal under either the traditional or relaxed standards of harm analysis. We cannot conclude that the error probably caused the rendition of an improper judgment or probably prevented her from presenting the error on appeal. Moreover, Jackson does not argue that the error caused the trial to be materially unfair. Jackson's first issue is overruled.

## II.  Motion for new trial

█ Jackson argues that the trial court erred in setting aside its order granting a new trial and in reinstating the judgment. She contends that the Texas Supreme Court's *In re Columbia Medical Center* opinion does not apply retroactively to her case because the order granting a new trial was signed prior to the Supreme Court's decision. She also argues that the court abused its discretion in setting aside the new trial order because the appellees' motion was untimely.

█ Whether a decision of the Texas Supreme Court applies retroactively or prospectively is within the discretion of the Court. *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.,* 826 S.W.2d 489, 518 (Tex.1992). A

decision applies retroactively unless the Court exercises its discretion to modify that application. *Id.; see also Bowen v. Aetna Cas. & Sur. Co.,* 837 S.W.2d 99, 100 (Tex.1992) (per curiam). Jackson contends that *Columbia* does not apply retroactively because it involves matters of procedure, but this argument is unsupported by relevant case law or the language of *Columbia* itself. In support of her argument, Jackson relies on *In re Abell,* 613 S.W.2d 255 (Tex.1981), and *Morrison v. Williams,* 665 S.W.2d 212 (Tex.App.-San Antonio 1984, no writ). But neither of these cases is instructive or controlling on the issue of the retroactive application of Texas Supreme Court decisions because both address the retroactive application of legislation. *See Abell,* 613 S.W.2d at 260; *Morrison,* 665 S.W.2d at 214. Moreover, the language of *Columbia* demonstrates that the Supreme Court did not intend for it to apply only prospectively. The Court held that trial courts do not have discretion to grant new trials without clearly identifying the reasons for doing so with reasonable specificity. *Columbia,* 290 S.W.3d at 212–13, 215.

■ "When a new trial is granted, the case stands on the trial court's docket 'the same as though no trial had been had.'" *In re Baylor Med. Ctr.,* 280 S.W.3d 227, 230–31 (Tex.2008) (quoting *Wilkins v. Methodist Health Care Sys.,* 160 S.W.3d 559, 563 (Tex.2005)). Thus, a trial court has the power to set aside an order granting new trial and to reinstate the prior judgment "any time before a final judgment is entered." *Id.* at 231 (quoting *Fruehauf Corp. v. Carrillo,* 848 S.W.2d 83, 84 (Tex.1993)). Accordingly, the trial court did not abuse its discretion in setting aside the order granting a new trial. We hold that the trial court did not err, and we overrule Jackson's second issue.

## III. Factual sufficiency

■ In her third issue, Jackson challenges the factual sufficiency of the evidence supporting the jury's findings of negligence and assignment of proportionate responsibility. She argues that the jury's negligence finding and assignment of 60% of the proportionate responsibility to her is against the great weight and preponderance of the evidence.

In reviewing a challenge to the factual sufficiency of the evidence, we consider and weigh all of the evidence and may set aside the verdict only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Benavente v. Granger,* 312 S.W.3d 745, 748 (Tex.App.-Houston [1st Dist.] 2009, no pet.). We may not substitute our opinion for that of the trier of fact merely because we might have reached a different fact conclusion. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988); *Klekar v. S. Pac. Transp. Co.,* 874 S.W.2d 818, 827 (Tex.App.-Houston [1st Dist.] 1994, writ denied). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Klekar,* 874 S.W.2d at 827. A jury may believe or disbelieve the testimony of a witness, in whole or in part, and it may resolve any inconsistencies in a witness's testimony. *Eberle v. Adams,* 73 S.W.3d 322, 327 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

Although there was evidence that Alonso was negligent in failing to yield to the bus, the evidence at trial also established that he was following the pavement markings. Jackson, Roberts, and Moore all testified that Jackson turned into the center lane. Both Roberts and Moore testified that she was driving in the center lane before the pavement markings indicated that vehicles could move into the turn lane, and Rob-

erts's diagram showed that Jackson's bus was stopped partially in the area designated as a turn lane and partially in the wide-unmarked area of pavement. Although Roberts testified that Jackson had the right-of-way, Alonso stated that she was trying to "beat" him and that she was "going in the opposite direction." There was also evidence that Jackson did not see the dump truck until seconds before the accident, raising an inference that she failed to keep a proper lookout when she moved from the unmarked area of pavement into the left-turn lane. *See Oakley v. C.E. Duke's Wrecker Serv.*, 557 S.W.2d 810, 813 (Tex.App.-Houston [1st Dist.] 1977, writ ref'd n.r.e.) (holding that jury's findings were not against great weight and preponderance of evidence when plaintiff failed to make defensive maneuvers when she saw defendant driving fast and perceived that he was not going to yield the right-of-way). Based on this evidence, the jury's finding was not against the great weight and preponderance of the evidence. *See Benavente*, 312 S.W.3d at 748.

■ Jackson also challenges the jury's assignment of 60% of the responsibility for the accident to her. However, the jury is given wide latitude in determining the negligent parties' proportionate responsibility. *Hagins v. E–Z Mart Stores, Inc.*, 128 S.W.3d 383, 392 (Tex.App.-Texarkana 2004, no pet.); *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 659–60 (Tex. App.-Dallas 2002, pet. denied.). As with our review of the sufficiency of the evidence to support the negligence finding, we may set aside the jury's determination of proportionate responsibility only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. Even if the evidence could support a different percentage allocation, we may not substitute our judgment for that of the jury. *Rosell*, 89 S.W.3d at 659–60; *Samco Props., Inc. v. Cheatham*, 977 S.W.2d 469, 478 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). Because the evidence supporting the jury's negligence finding is factually sufficient, we hold that the evidence supporting the jury's assignment of 60% responsibility to Jackson is also sufficient. *See Rosell*, 89 S.W.3d at 660. We overrule Jackson's third issue.

### Conclusion

We affirm the judgment of the trial court.

Justice SHARP, dissenting.

JIM SHARP, Justice, dissenting.

Texas' Bill of Rights guarantees the right to trial by a fair and impartial jury and authorizes the Legislature to pass laws to effectuate this right. *See Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 749 (Tex.2006); *see also* TEX. CONST. art. I, § 15 ("The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency."). Towards this end, the Supreme Court, as authorized by the Legislature and the Texas Constitution [1], has promulgated rules governing proper jury selection. Among these is Texas Rule of Civil Procedure 223 that sets out an un-

---

1. *See* TEX. GOV'T CODE ANN. § 22.003(d) (West 2004) ("The supreme court from time to time shall promulgate suitable rules, forms, and regulations ...."); *id.* § 22.004(a) ("The supreme court has the full rulemaking power in the practice and procedure in civil actions, except that its rules may not abridge, enlarge, or modify the substantive rights of a litigant."); *see also* TEX. CONST. art. V, § 31(b) ("The Supreme Court shall promulgate rules of civil procedure for all courts not inconsistent with the laws of the state as may be necessary for the efficient and uniform administration of justice in the various courts.").

qualified right to a jury shuffle, provided the demand is made prior to the commencement of voir dire. *See* Tex.R. Civ. P. 223.[2] The majority assumes without deciding that the trial court erred in denying Jackson's timely demand for a jury shuffle and then proceeds to analyze the error under the harmless error standard adopted by the Fort Worth Court of Appeals in *Carr v. Smith,* as well as the traditional harm analysis set forth in Texas Rules of Appellate Procedure 44.1(a)(1) and (2), and concludes that Jackson failed to meet her burden under either standard. Jackson argues that reversal is mandated in this case because the trial court's error probably prevented her from properly presenting her case on appeal. *See* Tex. R.App. P. 44.1(a)(2). Because I would hold that Texas Rule of Appellate Procedure 44.1(a)(2) requires reversal in the present case, I respectfully dissent.

The majority cites to *Rivas v. Liberty Mutual Insurance Co.,* 480 S.W.2d 610 (Tex.1972), for the proposition that a complaining party must demonstrate that the denial of a jury shuffle affected the randomness of the jury in order to prevail under either rule 44.1(a)(1) or (2). Faulting Jackson for failing to offer evidence that the court's refusal to shuffle the jury panel made it less random, the majority holds that Jackson failed to demonstrate harm under either standard.

The "randomness" language utilized by *Rivas,* however, does not pertain to whether the litigant has demonstrated sufficient harm, as the majority contends, but rather, whether an appellate court should presume harm when confronted with the type of error found in that case. The *Rivas* court reasons that because Rule 223 was intended to "insure a random selection of jurors" and the jury selection method utilized insured "a degree of randomness," the method used "substantially complied" with the underlying purpose of the rule, and therefore, the error complained of did not raise an inference of probable harm.

The *Rivas* court then proceeds to analyze the error under the traditional harmless error standard. Applying this standard, the court states that the complaining party must do more than simply allege that the "jury would have been composed of different jurors had its demand been granted" and suggests that a party could prevail under such a standard if it were to "show that it was required to accept a juror which it otherwise would have stricken had it not been for the trial court's ruling." *Rivas,* 480 S.W.2d at 612.[3]

At most, *Rivas* stands for the proposition that in order to prevail under the traditional harmless error standard of review set forth in Rule 44.1(a)(1), a litigant must do more than simply show that the "jury would have been composed of different jurors had its request been granted." *Id.* at 612. *Rivas,* however, does not require a litigant to show that the denial of such a demand affected the randomness of the jury in order to prevail under the same standard. To the extent the majority opinion misconstrues *Rivas* to require such

---

**2.** Article 35.11 of the Texas Code of Criminal Procedure guarantees a party's right to a jury shuffle in a criminal case. Tex.Code Crim. Proc. Ann. art. 35.11 (West 2006).

**3.** Although Jackson argues that the lack of a jury shuffle kept prospective jurors that she considered more desirable off the panel, she also contends that she was forced to accept two objectionable jurors that she would have struck, had she not already exhausted all of her peremptory challenges. Accordingly, Jackson has done more than simply allege that the "jury would have been composed of different jurors had [her] request been granted." *See Rivas v. Liberty Mut. Ins. Co.,* 480 S.W.2d 610, 612 (Tex.1972).

a showing, the majority opinion's application of *Rivas* is flawed.

Citing to *Cortez v. HCCI–San Antonio, Inc.*, 159 S.W.3d 87 (Tex.2005), Jackson contends that the trial court's error prevented her from properly presenting her issue on appeal, and consequently, reversal is required. *See* TEX.R.APP. P. 44.1(a)(2). In that case, the Texas Supreme Court stated: "No one except the jurors themselves knows exactly what transpires in the jury room; we know only the verdict. . . . [W]e cannot know for certain that [the challenged juror's] inclusion did not affect the verdict, so we presume harm." *Cortez*, 159 S.W.3d at 91 (citing *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex.2000)) (applying Supreme Court's harmless error rule, codified as Texas Rule of Appellate Procedure 61.1(a), which mandates reversal if error probably prevents appellant from properly presenting case on appeal; also citing Texas Rule of Appellate Procedure 44.1(a)(2) (court of appeals harmless error rule)). Although *Cortez* addresses the erroneous denial of a challenge for cause, and is therefore distinguishable from the present case, the *Cortez* court's reasoning is nevertheless persuasive.[4] It is no less difficult for a litigant to satisfy the onerous requirements in this case than it was in *Cortez*. Just as the trial court's erroneous refusal to strike a juror for cause in *Cortez* requires reversal because it was not possible for the appellate court to determine the impact the juror had on the verdict, the trial court's erroneous denial of a jury shuffle in this case also requires reversal because it is not possible for the court to determine (1) what impact the two jurors that Jackson was forced to accept after her demand for a jury shuffle was denied had on the verdict, or (2) which prospective jurors would have been impaneled had the jury been shuffled, much less what impact those jurors would have had on the case.

To require a litigant to demonstrate harm under such circumstances places the litigant in an impossible position. How can a litigant prove that a jury is more or less random based on a shuffle that never happened? This analysis leads to a chain of speculation about the possible composition of the jury and the harm suffered. Where, as the majority would require here, courts hold litigants to such an impossible standard, they foster a situation in which any trial court judge can refuse a jury shuffle demand with perfect impunity, secure in the knowledge that the litigant cannot meet its burden of proof on appeal. How, after all, can a litigant "prove" that one selection of qualified, nominally impartial jurors was preferable to another selection of qualified, nominally impartial jurors?

---

4. Citing to *Cortez v. HCCI–San Antonio, Inc.*, 159 S.W.3d 87 (Tex.2005), Jackson also argues that we should presume harm in this case. Despite the *Cortez* court's use of the term "presume harm", neither *Cortez* nor *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex.2000), the case upon which it relies, stand for the proposition that the errors complained of in those cases were immune to a harmless error analysis. Rather, the *Casteel* court reasoned that, because the complained-of error was such that it prevented the reviewing court from determining the impact of the error, the error was harmful under the Supreme Court's harmless error rule because it probably prevented the litigant from presenting his case on appeal. *See Casteel*, 22 S.W.3d at 388 (citing TEX.R.APP. P. 61.1(a) and holding "that when a trial court submits a single broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory"); *Cortez*, 159 S.W.3d at 91 (citing *Casteel* and stating "Here, we do not know why veniremember 7 was objectionable. But as in *Casteel*, we cannot know for certain that his inclusion did not affect the verdict, so we presume harm.")

This case also presents a deeper, unaddressed question—How can the trial court remain impartial when it receives a timely Rule 223 demand to shuffle the jury panel?[5] Rule 223 states that the court "shall" shuffle, which imposes a duty on the court to act. *See* Tex. Gov't Code Ann. § 311.016(2) (West 2005). Lawyers demand shuffles because they have a professional belief that those shuffles benefit their clients. However, for reasons that continue to mystify this Justice, existing case law imposes a harmless-error analysis on a sitting Texas trial judge's conscious refusal to abide by a very clearly-worded rule. Obviously the appellate court cannot compare the composition of the non-shuffled panel with the shuffled panel when the trial court did not do its job. Instead, harm is analyzed under this so-called "relaxed" standard by which a burden is placed on the party demanding the shuffle to somehow prove a lack of randomness in the jury panel. This begs the question of just how bad does the panel have to be before it crosses over into hypothetical "unrandomness." Engaging in such esoteric arguments is a valid reason for laypersons to make fun of our jury system.

The worst part of this "relaxed" harm analysis, however, is that, absent an egregious "unrandom" initial jury panel, the trial court's response to the shuffle demand is essentially discretionary. As the Court of Criminal Appeals has candidly explained, such discretionary rulings are essentially the trial court's limited right to be wrong. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App.1990 & 1991). When the rule says "shall" and the appellate courts allow the trial courts to ignore the plain meaning of that word, then the trial court has no law to follow.

Because I believe that judges should be impartial, I respectfully dissent to a relaxation of a clear duty into "do what you want." I doubt many trial judges want that freedom.

Accordingly, I would hold that the trial court's denial of a jury shuffle was error and reverse and remand for a new trial. *See* Tex.R.App. P. 44.1(a)(2).

---

5. The word "demand" is from Rule 223 itself. Presumably the Texas Supreme Court appreciated the distinction when it allowed a party to demand—not request—action from a trial court.