

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00204-CV

BNSF RAILWAY COMPANY          APPELLANT

V.

STACY WIPFF          APPELLEE

----------

## FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

Appellant BNSF Railway Company ("BNSF") appeals from a jury verdict in favor of Appellee Stacy Wipff. In three issues, BNSF challenges the trial court's denial of its demand for a jury shuffle, the sufficiency of the evidence to support the jury's damage award for Wipff's future pain and mental anguish, and the trial court's exclusion of evidence BNSF attempted to introduce during its cross-examination of Wipff. We reverse and remand for a new trial on the jury-shuffle issue.

# I. BACKGROUND

## A. FACTS LEADING TO WIPFF'S LAWSUIT

The underlying facts are largely undisputed on appeal. Wipff worked for BNSF as a conductor. On November 10, 2008, Wipff was the conductor for a train traveling from Winslow, Arizona, to Seligman, Arizona. The engineer on the train, Robert Diehl, had a history of safety and rule violations. Wipff and the brakeman began having problems with Diehl, and Wipff promptly reported the problems to her supervisor. On November 11, while Wipff was attempting to remove several cars from the train, Diehl intentionally mishandled the train, jostling Wipff from the top of a car and injuring her back. Although Wipff unsuccessfully attempted to work after the accident, she never returned to work for BNSF as a conductor.

In October 2010, Wipff filed suit against BNSF under the federal Employers' Liability Act ("FELA"), arguing that BNSF breached its nondelegable duty to provide Wipff with a safe place to work. *See* 45 U.S.C.A. § 51 (West 2007); *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 558, 107 S. Ct. 1410, 1412 (1987).

## B. JURY SELECTION

On Friday, January 6, 2012, at 9:00 a.m., the trial court conducted a pretrial hearing. The trial court informed counsel that the veniremembers, who were located in the central jury room, were completing detailed questionnaires. The questionnaire informed the veniremembers that they were answering the

2

questions "under penalty of perjury." BNSF's counsel, Susan J. Travis, did not view the venire while it was in the central jury room. The trial court began asking counsel about the expected length of voir dire and suggested that the completed questionnaires "should speed up voir dire." The trial court then instructed counsel that jury selection would begin at 10:00 a.m. on Monday, January 9. The hearing ended at approximately 11:00 a.m. on January 6. Travis received copies of the completed questionnaires at 1:00 p.m. and copies of the information cards at 4:15 p.m.

On Monday, January 9, the trial court called the case for trial, and Travis immediately demanded a shuffle of the venire on the record. Travis stated she had not seen the venire on Friday, but she acknowledged that she had reviewed the questionnaires before appearing on Monday and demanding the shuffle. Travis clarified, however, that her decision to demand a shuffle had been "primarily based" on the information cards rather than the questionnaires. The trial judge, relying on a case from this court, expressed that he felt bound to deny the jury-shuffle demand because the questionnaires had been reviewed, beginning voir dire; thus, the shuffle demand was untimely. *See* Tex. R. Civ. P. 223; *Carr v. Smith*, 22 S.W.3d 128, 133–34 (Tex. App.—Fort Worth 2000, pet. denied).

The venire then entered the courtroom. The trial court gave the venire the required admonitory instructions. *See* Tex. R. Civ. P. 226a. After conducting voir dire and excusing some veniremembers for cause, the trial court instructed

3

counsel to exercise their peremptory strikes. BNSF exercised all of its allotted peremptory strikes. *See* Tex. R. Civ. P. 233. The trial court seated the jury from the remaining veniremembers, gave the appropriate oath, and gave the prescribed jury instructions. *See* Tex. R. Civ. P. 226a, 236. Travis's co-counsel then stated on the record that two objectionable jurors were seated after he had to expend two peremptory strikes on veniremembers that were more objectionable but were not excused for cause.[1]

## C. TRIAL

The jury found in favor of Wipff and awarded her $2,718,653 in damages, including $1,000,000 for "[p]hysical pain and mental anguish that, in reasonable probability[,] will be sustained in the future." BNSF filed a motion to disregard the jury's verdict because it was supported by insufficient evidence. *See* Tex. R. Civ. P. 301. The trial court rendered final judgment in accordance with the jury's verdict.

BNSF then filed a motion for new trial again raising the insufficiency of the evidence to support the jury's verdict and asserting that the trial court erred by denying BNSF's timely demand for a shuffle. In an affidavit attached to the new-trial motion, Travis stated that she did not review the questionnaires before

---

[1]The timeliness of this objection is not an issue here because the record shows that BNSF alerted the trial court to this issue before the jury was seated. *See Cortez ex rel. Puentes v. HCCI–San Antonio, Inc.,* 159 S.W.3d 87, 91 (Tex. 2005) (holding objection to denial of cause challenge timely presented if made before jury is seated). The parties apparently agreed that BNSF could timely make its objection on the record after the jury was seated.

deciding to demand a shuffle and again averred that her decision to demand a shuffle was based on the information cards.  Travis stated she made the shuffle demand at the first opportunity to do so.  The trial court denied the motion for new trial.  BNSF timely filed its notice of appeal.

### D. ORDER REGARDING PENDING MOTIONS

On appeal and in response to BNSF's jury-shuffle argument, Wipff attached to her appellate brief an affidavit by the jury bailiff for Tarrant County, Paula Giaimo Morales.  Morales averred that her "standard operating procedure" is to administer an oath to the summoned veniremembers before they complete a case-specific questionnaire.  *See, e.g.,* Tex. R. Civ. P. 226.  BNSF moved to strike the affidavit, which was signed four days before Wipff filed her appellate brief, because the affidavit is not part of the appellate record and, thus, cannot be considered by this court.  *See Guajardo v. Conwell*, 46 S.W.3d 862, 864 (Tex. 2001).  Wipff then moved to supplement the record with Morales's affidavit.  For the reasons stated below in our discussion of the jury shuffle, we grant BNSF's motion to strike and deny Wipff's motion to supplement.

## II. VENIRE SHUFFLE

### A. STANDARD OF REVIEW TO DETERMINE ERROR

In its first issue, BNSF argues that the trial court erred by denying its timely demand for a shuffle of the venire.  BNSF asserts that determining whether the trial court erred is governed by a de novo standard of review.  Wipff contends that any error in refusing the jury shuffle is analyzed under an abuse of discretion

5

standard.  The procedural rule governing jury shuffles creates mandatory duties for a trial court.  *See* Tex. Gov't Code Ann. § 311.016 (West 2013) (providing "shall" imposes a duty); Tex. R. Civ. P. 223 (providing trial court "shall" shuffle venire upon timely demand).  The construction of this mandatory procedural rule is a legal question that we must review de novo.  *See Morris v. Aguilar*, 369 S.W.3d 168, 171 n.4 (Tex. 2012).  Therefore, we give no deference to the trial court's conclusion and give "a completely fresh look at the trial court's rulings." W. Wendell Hall et al., *Hall's Standards of Review in Texas*, 42 St. Mary's L.J. 3, 14 (2010).

### B. Timeliness of Demand

If a party timely demands a shuffle of the venire, the trial court is required to grant the demand:  "[T]he trial judge of such court, upon the *demand prior to voir dire examination* by any party or attorney in the case . . ., *shall* cause the names of all members of such assigned jury panel in such case to be . . . shuffled." Tex. R. Civ. P. 223 (emphases added).  Wipff asserts that because the venire had been sworn in the central jury room and because BNSF reviewed the jury questionnaires before demanding the shuffle, voir dire had begun, rendering its shuffle demand untimely; thus, the trial court correctly denied the demand.

When voir dire begins is the operative issue in this case.  Indeed, Rule 223 is clear that a shuffle demand must be made before voir dire begins.  *Id.*; *see* 4 Roy W. McDonald & Elaine A. Grafton Carlson, *Texas Civil Practice* § 21:14 (2d ed. 2001 & Supp. 2012–13).  We have held that a shuffle demand is untimely in a

6

civil case if done after counsel reviews case-specific questionnaires that give detailed information beyond the "name, rank, and serial number" given on information cards. *Carr*, 22 S.W.3d at 133–34. Not surprisingly, Wipff relies on the fact that BNSF reviewed a case-specific questionnaire before demanding the shuffle. It is important to delineate specifically what had occurred before BNSF's demand: BNSF had not seen the venire, it is unclear if the venire had been sworn, the venire answered the questionnaires under penalty of perjury, counsel had received the completed questionnaires and information cards, and the venire had not been given the Rule 226a instructions.

We first need to discuss Wipff's attempt to introduce an affidavit suggesting that the venire had been sworn while in the central jury room before completing their questionnaires. As BNSF points out, this evidence is improper because it was not before the trial court when it denied BNSF's shuffle demand, nor was it presented at the hearing on BNSF's motion for new trial. *E.g., Felt v. Comerica Bank*, No. 14-11-00783-CV, 2013 WL 1908875, at *1 (Tex. App.—Houston [14th Dist.] May 9, 2013, no pet.). Therefore and as stated above, we deny Wipff's motion to supplement and grant BNSF's motion to strike. We have not considered Morales's affidavit in this appeal.

The questionnaire itself informed the veniremembers that the answers they provided to the written questions were to be truthful "to the best of [their] knowledge" and were given under penalty of perjury. This warning is not the same as the oath required to be given to a venire under Rule 226: "You, and

7

each of you, do solemnly swear that you will true answers give to all questions propounded to you concerning your qualifications as a juror, so help you God." Tex. R. Civ. P. 226. The record only reflects the jurors were seated in the courtroom before the trial court gave the venire the Rule 226a instructions. We have no evidence that shows they were ever sworn under Rule 226.

But it is clear that the trial court had not given the venire the prescribed instructions under Rule 226a before the requested jury shuffle. The Texas Supreme Court, in ordering the form of the Rule 226a instructions, mandated that they "shall be given by the court to the members of the jury panel after they have been sworn in as provided in Rule 226 and *before the voir dire examination.*" Supreme Court of Tex. Admin. Order, *Amendments to Texas Rules of Civil Procedure 281 and 284 and to the Jury Instructions under Texas Rule of Civil Procedure* 226A, Misc. Docket No. 11-9047 (Mar. 15, 2011) (emphasis added) (text also included as editor note to Tex. R. Civ. P. 226a). Under the clear terms of the supreme court's order amending the instructions, voir dire is not to begin until after the admonitory instructions are given to the venire. Tex. R. Civ. P. 226a historical notes. While true that case-specific questionnaires were completed and received by counsel, counsel had not viewed the venire, and the trial court had not given the venire the prescribed instructions. These two facts distinguish this case from *Carr.*[2] *See Carr*, 22 S.W.3d at 133–34 ("The

---

[2]*Carr* did not specify if the Rule 226a instructions had been given before the jury shuffle was demanded and focused on the "substantive inquiry" of the

8

distinction between oral and written questioning is virtually meaningless, *especially where each party has already had the opportunity to view the panel.*" (emphasis added)).  Therefore, voir dire had not begun in this case even though counsel had an opportunity to review the questionnaires.

If Wipff's position were to prevail on this point, we question whether a party ever could realize the intended benefit of comprehensive questionnaires.  Such questionnaires take time to review, which should be undertaken before questioning the venire to ensure a prepared give-and-take between the attorneys and the veniremembers.  Wipff's position would require the attorneys to wait until after the veniremembers are seated and after a shuffle demand has been made to review the detailed questionnaires.   This defeats the purpose of questionnaires—to aid in preparing for voir dire—and would waive a party's right to a shuffle.  The court of criminal appeals has recognized this problem:  "And in some cases written questionnaires or juror information cards may be submitted long in advance of voir dire.  To hold that this information must be concealed until immediately before voir dire begins (or else the party forfeits his shuffle) could

---

start of voir dire, which was triggered in *Carr* by counsels' viewing of the veniremembers in their seated order, counsels' opportunity to review the case-specific and detailed questionnaires, and the trial court's swearing of the venire under Rule 226.  *Carr*, 22 S.W.3d at 134, 139.  Therefore, the timing of the Rule 226a admonishments was not at issue in *Carr*.

result in impeding the efficient progression of trial proceedings." *Garza v. State*, 7 S.W.3d 164, 166 (Tex. Crim. App. 1999).[3]

BNSF's shuffle demand was timely under Rule 223 because it was made before voir dire began. As such, the trial court erred by denying BNSF's shuffle demand.

## B. HARM ANALYSIS

### 1. Presumed Harm

BNSF asserts that harm should be presumed when a jury shuffle is erroneously denied. Wipff relies on an opinion from our sister court of appeals in arguing that any error in denying a jury shuffle is subject to the traditional harm analysis of Rule 44.1. *Jackson v. Williams Bros. Constr. Co.*, 364 S.W.3d 317, 321–22 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). But in *Jackson*, the appellant did not complain about the participation of jurors who should have been excluded and the resulting harm "arising from . . . the participation of a juror *as to whom no valid legal challenge was preserved*." *Id.* at 322 (emphasis added). In short, the trial court denied the *Jackson* appellant's jury-shuffle demand (which the court of appeals assumed was erroneous), and the court of appeals refused to presume harm because the *Jackson* appellant did not challenge the initial

---

[3]We recognize that *Carr* holds that civil precedents control a review of the propriety of a granted jury shuffle. *Carr*, 22 S.W.3d at 133. However, we agree with the court of criminal appeals regarding the practical effect of a rule requiring counsel to actively refrain from viewing the venire and reviewing questionnaires before demanding a shuffle.

randomness of the venire or otherwise complain about the effects of participation by any particular juror who should have been excluded. *Id.* at 321–22; *cf. Rivas v. Liberty Mut. Ins. Co.*, 480 S.W.2d 610, 612 (Tex. 1972) (rejecting presumed harm from denial of jury shuffle because no showing litigant "was required to accept a juror which it otherwise would have stricken had it not been for the trial court's ruling").

Here, BNSF specifically argued to the trial court that two objectionable jurors were seated that it would have struck if it could have. As such, we presume harm because "we cannot know for certain that [the objectionable jurors'] inclusion did not affect the verdict." *Cortez*, 159 S.W.3d at 91. We understand that *Cortez* involves the erroneous denial of challenges for cause to veniremembers, while this case concerns the erroneous denial of a jury shuffle. But other than showing either that objectionable jurors were seated after a timely jury-shuffle demand was denied and after the exhaustion of peremptory challenges or that the original order of the venire was not random, a party would seem to have no other way to show harm from the denial of a timely jury-shuffle demand. *See, cf.*, *Rivas*, 480 S.W.2d at 611–12 (denying presumption of harm from denial of jury-shuffle demand because venire randomly ordered through substantial compliance with Rule 223); *Mendoza v. Ranger Ins. Co.*, 753 S.W.2d 779, 780–81 (Tex. App.—Fort Worth 1988, writ denied) (presuming harm from denial of motion for mistrial based on venire that was impermissibly assembled and shown not to be random); *cf. Carr*, 22 S.W.3d at 135–36 (adopting

11

intermediate harm standard to gauge effect of erroneous grant of shuffle while recognizing "it would be unreasonable to require a complaining party to show specific harm like that required to preserve error for failing to grant a challenge for cause"). We conclude that by alerting the trial court that it was forced to take two objectionable jurors, BNSF preserved the error arising from the improper denial of the jury shuffle; therefore, we presume harm from the participation of those objectionable jurors, which arose from the improper denial of a jury shuffle. *See Cortez*, 159 S.W.3d at 91 (holding harm presumed from erroneous denial of challenge for cause because "we cannot know for certain that [veniremember's] inclusion [on the jury] did not affect the verdict"); *Jackson*, 364 S.W.3d at 321–22 (stating "[i]f the ordinary procedure for preserving error relating to a particular juror had been followed, any such error could have been remedied by the trial court") (relying on *Cortez*, 159 S.W.3d at 91).

## 2. Intermediate Harm Standard

Even if we applied the intermediate harm analysis we applied in *Carr* to review the erroneous grant of a jury shuffle—which requires a showing of a materially unfair trial—BNSF would be able to make such a showing. *See Carr*, 22 S.W.3d at 135–36 (applying "relaxed" error standard in "the jury selection context"). In determining whether a trial was "hotly contested" and, thus, materially unfair, we consider (1) the number of special issues, (2) the count of the verdict, (3) the absence of summary-judgment motions or motions for instructed verdict, (4) the pleadings and the jury findings, (5) whether the record

12

shows how the parties used their strikes, and (6) whether there were any double strikes. *Id.* at 136.

Before trial, BNSF filed a detailed motion for summary judgment challenging most aspects of Wipff's case. During jury selection, BNSF exhausted its allotted peremptory challenges, and there were no double strikes. After Wipff rested her case but before BNSF began to present its evidence, BNSF moved for a directed verdict arguing that there was no evidence that BNSF was a common carrier under FELA. The jury was asked to answer four questions, one of which had eight subparts. The jury's verdict was eleven to one, with the two jurors BNSF previously could not challenge voting in favor of Wipff.[4] After the jury's verdict, BNSF moved the trial court to disregard several of the jury's findings based on insufficient evidence. BNSF also filed a motion for new trial attacking the jury's verdict and the denial of a jury shuffle. Viewing all these factors in light of the entire record, BNSF has shown that the trial was materially unfair based on the erroneous denial of a jury shuffle arguably resulting in the seating of two objectionable jurors. We sustain issue one.

---

[4]Of course, ten jurors had to concur on all answers to render a verdict in Wipff's favor. *See* Tex. R. Civ. P. 292(a); *Palmer Well Servs., Inc. v. Mack Trucks, Inc.*, 776 S.W.2d 575, 576 (Tex. 1989). Had the two objectionable jurors not served on the jury, it could have resulted in only a nine to three verdict, which would not result in recovery for Wipff. *See Palmer Well*, 776 S.W.2d at 576.

### III.  CONCLUSION

Because the trial court erred by denying BNSF's timely demand for a jury shuffle and because harm is either presumed or the required harm is shown, BNSF is entitled to a new trial.  *See, e.g., Shepherd v. Ledford*, 962 S.W.2d 28, 34 (Tex. 1998); *Mendoza*, 753 S.W.2d at 781.  Therefore, we reverse the trial court's judgment and remand the case to that court for a new trial.  *See* Tex. R. App. P. 43.2(d).  Because of our disposition of issue one, we need not address the remaining issues.  *See* Tex. R. App. P. 47.1.

LEE GABRIEL
JUSTICE

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

DELIVERED:  August 8, 2013