Opinion issued April 11, 2013



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00924-CV

————————————

## KENNETH WASHINGTON, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF CLINTON WASHINGTON, APPELLANT

## V.

## MICAELA E. LIEM AND TRUMPS, INC., APPELLEES

On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2009-07180

## MEMORANDUM OPINION ON REHEARING

Appellant Kenneth Washington has moved for rehearing and en banc consideration. We grant rehearing, withdraw our opinion and judgment of March 31, and issue the following in their stead. We dismiss as moot Washington's motion for en banc consideration. Our disposition of the case remains unchanged.

Micaela Liem struck Clinton Washington with her car as Clinton stood in the roadway. Liem was intoxicated at the time and driving home from a night club owned by Trumps, Inc., where she worked. Washington died from the injuries that he sustained.

Kenneth Washington, as representative of Clinton's estate, sued Liem and Trumps for negligence and gross negligence, and Trumps for violations of the Dram Shop Act. *See* TEX. ALCO. BEV. CODE ANN. § 2.02(b) (West Supp. 2011). A jury found that Liem, Trumps, and Clinton's negligence each proximately caused Clinton's injuries. The jury placed sixty percent of the responsibility on Clinton and twenty percent each on Liem and Trumps. With respect to the dram shop claim, the jury found that that Trumps did not proximately cause Clinton's injury by providing an alcoholic beverage to Liem when she was obviously intoxicated. The trial court entered a judgment that Washington take nothing based on the jury's findings. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.001 (West 2008).

On appeal, Washington challenges the jury's findings that Clinton was contributorily negligent and a cause of his own death, and that Trumps did not violate the Dram Shop Act. Finding no error, we affirm.

**Background**

In December 2007, Clinton, a taxi cab driver, stopped to assist the occupants of a wrecked sport utility vehicle that rested on a grassy median between Interstate

2

45 and the frontage road. A passing truck driver, Rolando Richard, also had stopped to assist. Richard called 911, but he could not describe their location. Richard handed his cell phone to Clinton. As Clinton talked on the phone, he walked around to the front of the wrecked SUV. Clinton stepped into the feeder road, and Liem struck him with her car. Clinton later died as a result of his injuries.

Liem was on her way home from Trumps, where she worked as a dancer. She had consumed several alcoholic drinks while working that night. Several witnesses at the scene of the accident observed that Liem was intoxicated: Richard, Officer J.Z. Lin (the first police officer on the scene), and Officer Hall (who conducted Liem's field sobriety test). Liem slurred her speech, and the witnesses smelled alcohol on her breath. A later blood test revealed Liem's blood alcohol concentration to be .215, exceeding the legal limit for operating a motor vehicle. *See* TEX. PENAL CODE ANN. § 49.04(d) (West 2011).

In a separate criminal proceeding, Liem pleaded guilty to intoxication manslaughter. *See* TEX. PENAL CODE ANN. § 49.08. The trial court assessed her punishment at eight years' confinement, probated. At Washington's request, the trial court in this civil case entered Liem's criminal conviction into evidence for the jury's consideration.

## Discussion

Washington contends that the evidence adduced at trial is legally and factually insufficient to support the jury's verdict that Clinton caused, and was sixty percent responsible for, his own death. Washington further contends that the evidence is legally and factually insufficient to support the jury's finding in connection with the Texas dram shop claim that Trumps' provision of an alcoholic beverage to Liem when she was obviously intoxicated was not a cause of Clinton's injury.

### I.      Offensive Collateral Estoppel

First, Washington maintains that Liem's conviction for intoxication manslaughter determined that Liem was the sole cause of Clinton's death as a matter of law. He argues that the doctrine of collateral estoppel, used offensively, precludes the jury's finding that Clinton also was a cause of his own death. Although Washington frames his issues on appeal as a legal and factual sufficiency challenge, Washington argued this point as one of issue preclusion in the trial court and does so on appeal as well.

Questions of collateral estoppel are matters of law that we review de novo. *Quanaim v. Frasco Rest. & Catering*, 17 S.W.3d 30, 45 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Offensive collateral estoppel may prevent a party in a civil case from re-litigating an issue that already was litigated and decided in a

criminal case against that party if the burden of proof was the same or greater in the criminal case. *Dover v. Baker, Brown, Sharman & Parker*, 859 S.W.2d 441, 447 (Tex. App.—Houston [1st Dist.] 1993) (citing *McCormick v. Tex. Commerce Bank Nat'l Ass'n*, 751 S.W.2d 887, 889 (Tex. App. 1988)). The issue must be (1) identical to that in the criminal case; (2) actually litigated; and (3) as determined, a necessary part of the prior judgment. *Id.*

Liem's manslaughter conviction does not meet these elements. Although the conviction is evidence that supports a liability finding against Liem, it is not an adjudication of comparative fault. Contributory negligence will not absolve an intoxicated defendant from criminal liability for negligent homicide committed while operating a vehicle while intoxicated. *See Daniel v. State*, 577 S.W.2d 231, 234 (Tex. Crim. App. 1979); *Pope v. State*, 254 S.W.2d 245, 247 (Tex. Crim. App. 1951); *see also Turnage v. JPI Multifamily, Inc.*, 64 S.W.3d 614, 620 (Tex. App.—Houston [1st Dist.] 2001) (noting that negligent homicide provisions of Texas Penal Code are predecessors to intoxication manslaughter provisions of section 49.08). In contrast, under civil law, more than one actor may be a proximate cause of the same injury. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001).

Because comparative fault is no defense to a criminal charge of intoxication manslaughter, Liem's criminal case for intoxication manslaughter did not decide

Clinton's comparative responsibility. *See Lee Lewis Constr., Inc.*, 70 S.W.3d at 784. Thus, Liem's criminal conviction, while admissible as evidence of her civil liability, is not a legally conclusive determination of the percentage of her fault or of Clinton's contributory negligence. *See id.* Although, consistent with Liem's intoxication manslaughter conviction, the civil jury found that Liem was a proximate cause of Clinton's death, it was nonetheless permitted to apportion the relative percentages of fault among other parties. *See id.* Accordingly, we hold that Liem's criminal conviction for intoxication manslaughter does not preclude the civil jury's findings that Clinton was a proximate cause of his injuries and sixty percent at fault. Instead, it was evidence for the jury to consider in reaching those findings.

## II.     Sudden Emergency

Second, Washington contends that the evidence is legally and factually insufficient to support the jury findings that Clinton was a proximate cause of his injuries and sixty percent at fault, because he acted during a sudden emergency. Washington, however, did not request that the trial court instruct the jury on sudden emergency, nor did he object to its omission from the jury instructions; he therefore has waived an appellate challenge to its omission. *See* TEX. R. CIV. P. 274; *City of Houston v. Kolb*, 982 S.W.2d 949, 956 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 276

(Tex. 1986)). Even had the jury been so instructed, the sudden emergency doctrine does not provide a more lenient standard of care, as Washington suggests, but instead further explains the "same or similar circumstances" portion of an ordinary negligence instruction. *See Jordan v. Sava, Inc.*, 222 S.W.3d 840, 852–53 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Del Bosque v. Heitmann Bering-Cortes Co.*, 474 S.W.2d 450, 452–53 (Tex. 1971) (explaining that two cases interpreting sudden emergency doctrine as lower standard of care misapplied doctrine by intermingling it with doctrine of imminent peril). In reviewing the evidence for legal and factual sufficiency, we apply the ordinary negligence standard of care to examine whether the jury reasonably could have concluded that Washington failed to act as an ordinary prudent person under the same or similar circumstances. *See Ranger Cnty. Mut. Ins. Co. v. Guin*, 723 S.W.2d 656, 660 (Tex. 1987).

## III. Legal and Factual Sufficiency—Negligence

### A. Standard of Review

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* So long as the evidence falls within the zone of reasonable disagreement, we may not substitute

7

our judgment for that of the fact-finder. *Id.* at 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. Although we consider the evidence in the light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.* at 822.

In reviewing a factual sufficiency point, we consider all the evidence supporting and contradicting the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.). We set aside the verdict only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony, and they may choose to believe one witness and disbelieve another. *City of Keller*, 168 S.W.3d at 819; *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

**B. Analysis**

The duty to act as an ordinarily prudent person includes keeping a proper lookout. *Rohan v. Baker*, 470 S.W.2d 238, 241 (Tex. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.) A person is contributorily negligent if the person fails to exercise ordinary care regarding his or her own safety. *Kroger Co. v. Keng*, 23

S.W.3d 347, 351 (Tex. 2000). A jury has wide latitude in apportioning responsibility. *See Jackson v. Williams Bros. Constr. Co.*, 364 S.W.3d 317, 325 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

The jury heard conflicting evidence at trial regarding Liem's and Clinton's comparative fault. Liem was intoxicated at the time of the accident. Washington's expert concluded that Liem's intoxication would have reduced her reaction time and limited her visual acuity. It would have made it difficult for her to see and react to someone in her peripheral vision, such as Clinton, standing on the road. The jury heard that Liem was convicted of intoxication manslaughter in connection with Washington's death.

Other evidence at trial suggested that Liem was not solely responsible for the accident. Washington had moved into Liem's lane of travel when she struck him. Richard, who was present when the collision happened, testified that the wrecked SUV was close to the feeder road, but it was not parked on the road. Photos of the scene confirm his testimony. There were no warning lights or flares to notify Liem that there was an accident or vehicle stalled ahead, and none of the witnesses could remember whether the SUV had its lights on. Liem testified that she did not see the SUV until she was close to it, and then thought it was an abandoned vehicle.

Officer Lin testified that Liem had the right of way and was driving within her lane of travel when she struck Clinton. Clinton wore dark clothing—a dark jacket and jeans—and may not have been visible behind the SUV. A defense expert also testified that Clinton would have moved from behind the SUV and crossed in front of Liem's car in about a second. He concluded that not even a sober driver could have reacted quickly enough to avoid hitting Clinton under these circumstances.

Given the location of the SUV, the lack of visibility, and his position on the road inside the lane of travel, there was evidence that Clinton was negligent by failing to keep a proper lookout while standing on a roadway. *See Rohan*, 470 S.W.2d at 241. Richard testified that it would have been reasonable to look for traffic before stepping into the road. When Richard had stepped onto the feeder road shortly before Clinton was hit, he had looked for oncoming cars. Nothing obstructed Clinton's view of an oncoming car, had he looked. Richard recounted that Clinton was talking on a cell phone at the time, and apparently was preoccupied, when he stepped onto the road.

As the jury heard conflicting evidence of Clinton's and Liem's respective negligence, it was within its province to weigh that evidence and assess the witnesses' credibility. *See City of Keller*, 168 S.W.3d at 819; *Jackson*, 364 S.W.3d at 325. We hold that sufficient evidence exists to support the jury's verdict as to

causation and apportionment of responsibility. *See City of Keller*, 168 S.W.3d at 827; *Jackson*, 364 S.W.3d at 325; *Cain*, 709 S.W.2d at 176.

## IV. Legal and Factual Sufficiency—Dram Shop Act

Finally, Washington contends that the evidence is legally and factually insufficient to support the jury's finding that Trumps did not violate the Dram Shop Act. The Dram Shop Act imposes liability on the provider of alcohol for injuries caused by a patron when:

> (1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others; and

> (2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.

TEX. ALCO. BEV. CODE ANN. § 2.02(b).

Washington points to the evidence demonstrating that Liem was intoxicated after the accident to show that Liem was obviously intoxicated while she worked at Trumps. She failed a field sobriety test, and the witnesses at the scene of the accident believed her to be intoxicated. The critical time in a dram shop inquiry, however, is when the provision of alcohol occurred. *See* TEX. ALCO. BEV. CODE ANN. § 2.02(b)(1); *J.D. Abrams, Inc. v. McIver*, 966 S.W.2d 87, 92 (Tex. App.— Houston [1st Dist.] 1998, pet. denied) (holding that evidence did not raise a fact issue on dram shop liability when it showed only that patron was intoxicated after

car accident but not when earlier provided alcohol). Washington's expert testified that Liem's blood alcohol content was .215 when tested by the Houston police at 4:55 a.m. From this, he extrapolated that Liem had a blood alcohol content of .25 to .29 at 1:00 a.m., when Liem stated that she had her last drink at Trumps. The expert concluded that Liem would have exhibited signs of obvious intoxication to a provider of alcohol at that time, ranging from staggering gait, slurred speech, and lack of coordination to an inability to stand or walk, vomiting, incontinence, and sleep or stupor. He testified that these signs would have been exhibited from at least midnight to 2:00 a.m. on the night of the accident if Liem had started drinking around 7:00 p.m.

Washington's expert conceded, however, that alcohol affects people differently when they are intoxicated. Officer Hall, who conducted Liem's field sobriety test at the scene of the accident, testified that people have different tolerance levels, and someone may have a blood alcohol concentration of three or four times the limit for driving yet carry on a normal conversation. Others could have the same blood alcohol concentration and be unable to function.

The record contained no evidence of Liem's behavior at Trumps or when Liem was provided her last drink. No one at Trumps recalled noticing that Liem was intoxicated on the night of the accident. Employees and former employees working the night of the accident testified that they had never seen Liem noticeably

intoxicated at work. In particular, two employees, Josiah Tomas and Kathryn Smith, who were working the night of the accident, testified that they had never seen Liem in an obviously-intoxicated state. Neither recalled noticing Liem on the night of the accident.

Arthur Duchaney, a former bartender at Trumps, who was also working on the night of the accident, testified that he had seen Liem sleep in her car on a previous occasion and that Trumps management had instructed him not to serve Liem. He testified that other employees had told him Liem was intoxicated on prior occasion, but he had never seen Liem staggering or stumbling and such behavior would have been noticeable. He did not learn about the accident until several months later, and could not recall whether he had observed Liem the night of the accident.

Finally, Shalon Duff, Liem's former roommate spoke to Liem on the phone sometime between 2:00 and 2:20 a.m., minutes before the accident and more than an hour after Liem thought she had her last drink. Duff testified that Liem sounded obviously intoxicated on the phone. But Duff did not know Liem's location at the time or whether she was calling from Trumps. Liem told Duff that she was in a parking lot.

It is not clear from the record when Liem had her last drink. Liem herself guessed that it was around 1:00 a.m., but stated that she was unsure. Washington's

expert conceded that if Liem had her last drink of alcohol closer to 2:00, she would have had a higher blood alcohol content after the accident than she did earlier while she was at Trumps.

In short, the parties vigorously contested at trial whether Liem appeared intoxicated while she was working. Because no one at Trumps remembered noticing Liem when they worked with her that night, the jury reasonably could have inferred that she was not exhibiting the signs of intoxication about which Washington's expert testified—staggering gait, slurred speech, lack of coordination, inability to stand or walk, vomiting, incontinence, or stupor at the time that Trumps served Liem. The jury also could have believed that Liem's intoxication was not obvious, given both Washington's toxicology expert's testimony that people appear differently when intoxicated and Officer Hall's testimony that people with higher tolerance levels may seem normal even when very intoxicated. Viewed in a light favorable to the verdict, the jury reasonably could have concluded that Liem's intoxication was not so obvious as to present a clear danger apparent to Trumps when Trumps served Liem. *See City of Keller*, 168 S.W.3d at 822; *Cain*, 709 S.W.2d at 176.

**Conclusion**

We hold that the evidence was legally and factually sufficient to support the jury's verdict. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.