ACCEPTED
04-14-00124-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/9/2015 7:31:18 PM
KEITH HOTTLE
CLERK

# NO. 04-14-00124-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/9/2015 7:31:18 PM
KEITH E. HOTTLE
Clerk

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
SAN ANTONIO

---

*WESTFREIGHT SYSTEMS, INC., ET AL.*

*v.*

*JOHN MICHAEL HEUSTON, ET AL.*

---

From The 79th Judicial District Court
of Jim Wells County, Texas

---

## REPLY BRIEF OF HEUSTON, RODRIGUEZ, AND THE ESTATE OF JUANA GARZA AS CROSS-APPELLANTS AND AS APPELLEES

---

John Blaise Gsanger
SBN: 00786662
**THE EDWARDS LAW FIRM**
802 N. Carancahua, Suite 1400
Corpus Christi, Texas 78401
Tel: (361) 698-7600
Fax: (361) 698-7614

**ORAL ARGUMENT REQUESTED ONLY IF THE COURT BELIEVES ARGUMENT WOULD ASSIST CASE DISPOSITION**

David T. Bright
SBN: 02991490
**SICO, WHITE, HOELSCHER, HARRIS & BRAUGH, LLP**
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Tel: (361) 653-3300
Fax: (361) 653-3333

**ATTORNEYS FOR CROSS-APPELLANTS/ APPELLEES JOHN HEUSTON, ET AL.**

# I. TABLE OF CONTENTS

I.     **TABLE OF CONTENTS** ........................................................................... ii

II.    **INDEX OF AUTHORITIES** ...................................................................... iii

III.   **ARGUMENT** ..................................................................................................1

    A. Westfreight did far worse than negligently create a dangerous condition .......1

      1. Westfreight's negligence during the crash and in the preceding seconds .....1

      2. Westfreight relies on cases which are readily distinguishable ......................4

        a. *Bell v. Campbell* involved two different crashes separated in time...........5

        b. *Erie Ins. Exch. v. U.S.* involved a truck speeding in a snowstorm ............6

        c. *Tex. Elec. Co-op. v. Dillard* refutes Westfreight's argument.....................6

        d. *City of Kemah v. Vela* was decided on sovereign immunity grounds .......7

        e. *Fitzsimmons v. Brake Check* involved two crashes and car maintenance .7

        f. *Texas & New Orleans Railroad* involved a train, not a lane change ........8

    B. There is overwhelming evidence of proximate causation.................................9

      1. Westfreight's no evidence point fails to consider all of the evidence ..........9

      2. Westfreight misunderstands "but for" and "substantial factor" analysis ....11

      3. Proof of foreseeability and reckless disregard of foreseen dangers ...........13

    C. Westfreigh reduced Garza's ability to perceive the intrusion into her lane ....15

    D. Westfreight's complaints about expert methodology were not preserved .....18

    E. Heuston and Rodriguez preserved and fully briefed their cross-point............20

IV.   **PRAYER**...................................................................................................22

V.    **CERTIFICATES** ......................................................................................23

## II. INDEX OF AUTHORITIES

**Cases**

*Arkoma Basin Exploration Co. v. FMF Assoc. 1990-A, Ltd.*,
249 S.W.3d 380 (Tex. 2008) ..............................................................................19

*Bell v. Campbell*,
434 S.W.2d 117 (Tex. 1968) ............................................................................ 4-5

*Bostic v. Georgia-Pacific Corp.*,
439 S.W.3d 332 (Tex. 2014) ..............................................................................12

*Burrow v. Arce*,
997 S.W.2d 229 (Tex. 1999) ..............................................................................19

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) ................................................................................9

*City of Kemah v. Vela*,
149 S.W.3d 199 (Tex. App.-Houston [14th Dist.] 2004, pet. den.) ............5, 7

*City of San Antonio v. Pollock*,
284 S.W.3d 809 (Tex. 2009) ..............................................................................19

*Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*,
136 S.W.3d 227 (Tex. 2004) ..............................................................................19

*Daven Corp. v. Tarh E & P Holdings, L.P.*,
441 S.W.3d 770 (Tex. App.-San Antonio 2014, pet. filed)............................21

*Del Lago Partners, Inc. v. Smith*,
307 S.W.3d 762 (Tex. 2010) ..............................................................................11

*Erie Ins. Exch. v. U.S.*,
115 F.Supp.2d 493 (M.D. Pa. 2000)................................................................ 5-6

*Flying J Inc. v. Meda, Inc.*,

373 S.W.3d 680 (Tex. App.-San Antonio 2012, no pet.).............................21

*Fitzsimmons v. Brake Check Inc.*,
    832 S.W.2d 446 (Tex. App.-Houston [14th Dist.] 1992, no writ) .......... 5, 7-8

*Ford Motor Co. v. Castillo*,
    444 S.W.3d 616 (Tex. 2014) ....................................................................9

*Formosa Plastics Corp., USA v. Kajima Intn'l, Inc.*,
    216 S.W.3d 436 (Tex. App.-Corpus Christi 2006, pet. denied)....................20

*Gen. Motors Corp. v. Sanchez*,
    997 S.W.2d 584 (Tex. 1999) ...................................................................19

*In re ADT Sec. Servs., S.A. de C.V.*,
    No. 04-08-00799-CV, 2009 WL 260577 (Tex. App.-San Antonio Feb. 4,
    2009, orig. proceeding).............................................................................9

*In re City of Lancaster*,
    228 S.W.3d 437 (Tex. App.-Dallas 2007, no pet.)..........................................9

*In re Lerma*,
    144 S.W.3d 21 (Tex. App.-El Paso 2004, orig. proceeding) ..........................9

*Ingham v. O'Block*,
    351 S.W.3d 96 (Tex. App.-San Antonio 2011, pet. denied) ........................21

*Jackson v. Williams Bros. Constr. Co.*,
    364 S.W.3d 317 (Tex. App.-Houston [1st Dist.] 2011, pet. denied).............21

*Orren v. BWF Corp.*,
    NO. CA2013-11-112, 2015 WL 135365, 2015-Ohio-62 (Ohio App. 12 Dist.
    Jan 12, 2015)............................................................................................16

*Perry v. Cohen*,
    272 S.W.3d 585 (Tex. 2008) ...................................................................20

*Pilgrim's Pride Corp. v. Burnett*,
    No. 12-10-00037-CV, 2012 WL 381714 (Tex. App.-Tyler Feb. 3, 2012, no

pet.) ............................................................................................................16

*Royce Homes, L.P. v. Humphrey*,
     244 S.W.3d 570 (Tex. App.-Beaumont 2008, pet. denied) ..........................21

*Ryder Integrated Logistics, Inc. v. Fayette County*,
     No. 13-0968, 2015 WL 496303 (Tex. Feb. 6, 2015) ............................. 11, 13

*Schlafly v. Schlafly*,
     33 S.W.3d 863 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) ..............9

*Sossi v. Willette & Guerra, LLP*,
     139 S.W.3d 85 (Tex. App.-Corpus Christi 2004, no pet.)..............................9

*Tex. Elec. Co-op. v. Dillard*,
     171 S.W.3d 201 (Tex. App.-Tyler 2005, no pet.) ...................................... 5-7

*Texas & New Orleans Railroad Co. v. Compton*,
     136 S.W.2d 1113 (Tex. 1940) ............................................................... 5, 8-9

*VTech Holdings Ltd. v. PriceWaterhouseCoopers LLP*,
     348 F.Supp.2d 255 (S.D.N.Y. 2004) ...........................................................18

*W. Invs., Inc. v. Urena*,
     162 S.W.3d 547 (Tex. 2005) .......................................................................11

*Weeks Marine, Inc. v. Garza*,
     371 S.W.3d 157 (Tex. 2012) .......................................................................20

**Statutes and Rules**

Tex. Transp. Code Ann. § 545.363(a) .....................................................................2

49 CFR § 392.33(a)...............................................................................................15

IN THE COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS – SAN ANTONIO

---

*WESTFREIGHT SYSTEMS, INC., ET AL. v. JOHN MICHAEL HEUSTON, ET AL.*

---

From The 79th Judicial District Court of Jim Wells County, Texas

---

**REPLY BRIEF OF CROSS-APPELLANTS/APPELLEES**

---

TO THE HONORABLE COURT OF APPEALS:

## III.   ARGUMENT

### A. Westfreight did far worse than negligently create a dangerous condition

*1. Westfreight's negligence during the crash and in the preceding seconds*

This is not a case where Westfreight carelessly created a dangerous situation that manifested days, hours, or minutes later in a crash that killed Janie Garza. Westfreight's negligence occurred during the crash when Westfreight pulled into Garza's lane and in the seconds before the crash when Westfreight backed onto the darkened highway and then pulled forward without looking for oncoming traffic.

Westfreight's own crash reconstructionist admitted it "was a poor decision" for Westfreight's truck driver to back across a 70-mile-per-hour highway at night because it is "not prudent" for a truck to block the road.   *6 RR 25, 59-60.*   Yet in a "night environment" where "it's dark" and the "pavement is dark," Westfreight's

1

truck trailer was "angled across the road" with the back of the trailer "in the left-hand lane" while moving into the right lane at "five to 10 miles an hour … at the time of the impact." *6 RR 20, 29-30, 102; see also 4 RR 46-47, 65-70, 77-78, 81-84, 226; 23 RR Ex. 242-43; cf.* Tex. Transp. Code Ann. § 545.363(a) ("operator may not drive so slowly as to impede the normal and reasonable movement of traffic").

As a result, the crash occurred while the truck was moving forward and "the trailer was straddling the white dashed line" separating the left lane from the right lane, and – according to Westfreight's own witness – that was imprudent:

> Q. Let's talk about February 20th, 2012, Highway 281, in the dark, after they backed on the highway and they're straddling the white line; is that reasonably prudent for a truck driver to do?
> A. In general, you wouldn't want to do that.

*6 RR 102, 109.* The jury heard why this negligence by Westfreight's truck driver caused the crash:

> Well, the collision would not have happened unless they pulled the trailer not just into the right lane, but where it's straddling the center line of the roadway. Because remember, we know exactly where that van impacted the rear of the trailer. We know where that was in the roadway. It left fingerprints in the roadway, those gouge marks. So it would have had to have backed over onto the shoulder and then pulled out some and pulled into the middle of the roadway splitting both lanes before it was struck…. [I]t should be intuitively obvious, that the reason this collision occurred is because the driver chose to back the vehicle out, it's in the lane crossing the roadway, blocking the roadway for over 60 seconds. It's in the left travel lane for the tail lights, and then it's moving into the right travel lane. The driver and the co-driver, neither one were aware of oncoming traffic. And to pull a truck out there and to block the roadway with it is certainly not a prudent thing

to do. It's not what any reasonable truck driver would do. It's a known hazard not only to the trucking industry, but to probably everybody in this room that you don't have a hard, fixed object in a dark roadway at night.

*4 RR 81-83.*

Westfreight's lane change was also negligent because the truck was "violating … the right of way of the vehicle approaching from the rear," which was Janie Garza's minivan. *4 RR 249-50.* The Westfreight truck's entry into Garza's lane of traffic was "a negligent thing to do because it's certainly a foreseeable hazard to pull out in a slow moving truck and to block those lanes" and it was irresponsible misconduct:

> Because a truck driver is aware … he's … driving a … very slow-moving vehicle. And so what … he's doing if he does do that, move from the shoulder onto the travel lane, is he's putting 100 percent of the avoidance on the other person, taking no responsibility himself.

*4 RR 81-82.*

In addition to Westfreight's careless driver, Westfrieght also had a spotter in the truck whose primary job as to look down the roadway to protect oncoming traffic, but he admittedly failed to see Janie Garza as she was driving on Highway 281 that night. *5 RR 37-39, 41, 50-51.* Westfreight's spotter admitted he would have seen Garza before the truck pulled into her lane if he had been performing his job, *5 RR 51*, and Westfreight's trucking safety witness agreed the spotter's failure was negligence:

3

Q. So now the only thing that is possible is that Bailey and Johnston were not looking for approaching motorists such as Ms. Garza, correct?

A. Yes. For whatever reason, they did not see her.

Q. And they should have been, correct?

A. They should have been watching, yes.

…

Q. Is it negligent for these gentlemen not to be looking for approaching motorists on the roadway that night?

A. It would be negligent of them not to follow a recommended procedure of watching, look out around – in and around – front of, back, side of the vehicle.

Q. Okay. And they didn't do that, correct?

A. Not to my satisfaction, no, sir.

Q. Okay. And that would be negligent for them not to, right?

A. I'm afraid it would be.

…

Q. Do you agree that it is negligent to make a start from a stopped position in that fashion?

A. Without being aware of the traffic that's coming, one blends into the other. So, yes.

*5 RR 203-05.*

### 2. *Westfreight relies on cases which are readily distinguishable*

Notwithstanding Westfreight's active negligence during the crash and in the preceding seconds as documented by crash reconstructionists and trucking safety experts for both sides in the case, Westfreight persists in arguing that it did nothing worse than create "a condition necessary for the collision to occur." *Westfreight Reply Br. pp. 18-23.* In support of this argument, Westfreight cites a half dozen cases – none of which supports Westfreight's argument in this case:

- *Bell v. Campbell*,

4

- *Erie Ins. Exch. v. U.S.*,

- *Tex. Elec. Co-op. v. Dillard*,

- *City of Kemah v. Vela*,

- *Fitzsimmons v. Brake Check Inc.*,

- *Texas & New Orleans Railroad Co. v. Compton*.

*See Westfreight Reply Br. pp. 18-23.*

a. <u>*Bell v. Campbell*</u> involved two different crashes separated in time

In *Bell v. Campbell*, the surviving family of John Bell sued Addie Campbell, a woman who was involved in a car crash with Thomas Marshal. *Bell v. Campbell*, 434 S.W.2d 117*,* 118-19 (Tex. 1968). After the crash between Cambell and Marshal, Bell was a passerby who stopped to help remove debris from the highway when Bell was hit by a drunk driver, W. W. Fore., and the *Bell* court held that "[t]he active and immediate cause of the second collision, however, was an entirely independent agency, Fore":

> All forces involved in or generated by the first collision had come to rest, and no one was in any real or apparent danger therefrom. No one would have been injured if there had not been a second collision.

*Id.* at 120. The case now before the Court is entirely different: there is no "first collision" and "second collision" in this case. The active and immediate cause of the crash that killed Janie Garza was Westfrieght's negligent driver with its trailer

5

in the left lane slowly moving into the Garza's lane – the right lane – after Westfreight's spotter negligently failed to spot Garza. The forces from Westfreight's negligence had not "come to rest;" instead, the forces from Westfreight's negligence were moving at five to 10 miles per hour in the dark while straddling the lane divider as they moved from the left lane into the right lane of Highway 281.

b. *Erie Ins. Exch. v. U.S.* involved a truck driver speeding in a snowstorm

In *Erie Insurance Exchange v. U.S.*, Jacob Hodge (insured by Erie Insurance) slowed or stopped his SUV in the left lane of a snow-covered highway in a heavy snowstorm due to extremely reduced visibility, and he was rear-ended by a United States Post Office truck that had driven past several crashes and many stopped cars and had moved into the left lane to pass slower cars. *Erie Ins. Exch. v. U.S.*, 115 F.Supp.2d 493, 494-95 (M.D. Pa. 2000). Based on the snowstorm, the Post Office truck driver was found to be at fault for driving too fast for the conditions. *Id.* at 495-96. *Erie Insurance Exchange v. U.S.* has no bearing on the case now before this Court because Westfreight's blocking both lanes of the highway was not justified by extreme snow conditions, and Janie Garza was not found to be driving at an excessive speed for the conditions.

c. *Tex. Elec. Co-op. v. Dillard* refutes Westfreight's argument

In *Texas Electric Co-op v. Dillard*, a Texas Electric Co-op truck driver

negligently hit a cow and left its carcass on the road and then failed to adequately warn other drivers of the carcass blocking the road, and the truck driver's carelessness was found to be the cause of a subsequent crash between Kenneth Dillard and Mae Joyce Brown. *Tex. Elec. Co-op. v. Dillard*, 171 S.W.3d 201, 203-06 (Tex. App. – Tyler 2005, no pet.). Nothing in this case offers any justification for Westfreight's negligence. To the contrary, the imposition of liability against Texas Electric Co-op despite the small gap between its negligent collision with the cow and Dillard's subsequent fatal crash rebuts Westfreight's attempt to imply some gap between its admitted negligence and the fatal crash in this case.

d. *City of Kemah v. Vela* was decided on sovereign immunity grounds

In *City of Kemah v. Vela*, Gabriel Vela pulled over into the left lane as part of a traffic stop and then two marked police cars with their emergency overhead lights activated pulled in line behind Vela. *City of Kemah v. Vela*, 149 S.W.3d 199, 201 (Tex. App. –Houston [14th Dist.] 2004, pet. den.). Vela brought suit over injuries he sustained when a truck hit the rearward police car which jolted forward into the other cars, but Vela's case was dismissed on sovereign immunity grounds. *Id.* at 203-05. Nothing in this case offers any justification for Westfreight's negligence because *City of Kemah v. Vela* was decided on sovereign immunity grounds.

e. *Fitzsimmons v. Brake Check* involved two crashes and car maintenance

In *Fitzsimmons v. Brake Check Inc.*, Mary Ann Fitzsimmons was rear-ended

7

by another car when she and the rest of the traffic on the freeway was slowing due to a crash up ahead in the road, and this other crash resulted from the tire coming off of a car that had been recently serviced by Brake Check. *Fitzsimmons v. Brake Check Inc*., 832 S.W.2d 446, 448-50 (Tex. App. – Houston [14th Dist.] 1992, no writ). The court found the driver who rear-ended Fitzsimmons – and not Brake Check – was the cause of the crash. *Id.* If maintenance performed by an automotive service center caused another car to break down which resulted in the Westfreight truck slowly pulling into Janie Garza's lane, and if Garza then tried to sue that service center, *Fitzsimmons v. Brake Check* would be relevant. *Fitzsimmons v. Brake Check* is not relevant, however, because it was Westfreight's negligence that caused the Westfreight truck to pull into Janie Garza's lane at five to 10 miles per hour on a dark night with its trailer at an angle blocking both lanes.

f. *Texas & New Orleans Railroad* involved a train, not a lane change

In *Texas & New Orleans Railroad Co. v. Compton*, decided 75 years ago, Charles Compton drove his car into a long, slow-moving train (he was driving over 30 miles per hour when he hit the sixtieth car of an 87-cars train traveling less than ten miles per hour). *Texas & New Orleans Railroad Co. v. Compton*, 136 S.W.2d 1113, 1114 (Tex. 1940). There was conflicting evidence whether the train had sounded its whistle as the locomotive engine car passed the crossing, but the court found that this did not raise an issue of causation because the locomotive car with

8

the whistle had passed the crossing three minutes before Compton hit the train's sixtieth car. *Id.* at 1114-15. *Texas & New Orleans Railroad Co. v. Compton* has no applicability to the case now before the Court because a train runs on fixed tracks and cannot, therefore, be found to have negligently intruded into another driver's lane after negligently failing to spot the oncoming car with the right-of-way.

## B. There is overwhelming evidence of proximate causation

### 1. *Westfreight's no evidence point fails to consider all of the evidence*

The scope of evidence viewed in a "no evidence" challenge includes all of the evidence:

> In a legal sufficiency review, we must view the evidence in the light most favorable to the verdict. … When reviewing all of the evidence in a light favorable to the verdict, "courts must assume jurors made all inferences in favor of their verdict if reasonable minds could, and disregard all other inferences in their legal sufficiency review."

*Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620-21 (Tex. 2014) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005), citations omitted).

Westfreight argues that there is no evidence of causation, but Westfreight neither attempts to explain away (nor even cites[1]) this unambiguous evidence of

---

[1] "The duty of honesty and candor a lawyer owes to the appellate court includes fairly portraying the record on appeal." *In re ADT Sec. Servs., S.A. de C.V.*, No. 04-08-00799-CV, 2009 WL 260577, at *4-5 (Tex. App.—San Antonio Feb. 4, 2009, orig. proceeding) (quoting *Schlafly v. Schlafly*, 33 S.W.3d 863, 873 (Tex. App.-Houston [14th Dist.] 2000, pet. denied)); *see also In re City of Lancaster*, 228 S.W.3d 437 (Tex. App.-Dallas 2007, no pet.); *In re Lerma*, 144 S.W.3d 21, 27 (Tex. App.-El Paso 2004, orig. proceeding); *Sossi v. Willette & Guerra, LLP*, 139 S.W.3d 85, 89 (Tex. App.-Corpus Christi 2004, no pet.).

9

causation:

> Well, the collision would not have happened unless they pulled the trailer not just into the right lane, but where it's straddling the center line of the roadway. Because remember, we know exactly where that van impacted the rear of the trailer. We know where that was in the roadway. It left fingerprints in the roadway, those gouge marks. So it would have had to have backed over onto the shoulder and then pulled out some and pulled into the middle of the roadway splitting both lanes before it was struck…. [T]he reason this collision occurred is because the driver chose to back the vehicle out, it's in the lane crossing the roadway, blocking the roadway for over 60 seconds. It's in the left travel lane for the tail lights, and then it's moving into the right travel lane. The driver and the co-driver, neither one were aware of oncoming traffic. And to pull a truck out there and to block the roadway with it is certainly not a prudent thing to do. It's not what any reasonable truck driver would do. It's a known hazard not only to the trucking industry, but to probably everybody in this room that you don't have a hard, fixed object in a dark roadway at night.

*4 RR 81-83.*

In addition to this causation testimony, Westfreight's Safety Director admitted that this crash was preventable and would not have occurred if Westfreight's driver had not violated Westfreight's policy to operate safely, *5 RR 272*, by improperly pulling into Janie Garza's lane without first making sure the lane was clear:

> Q. Preventable accident … means it could have been prevented but for something that the 18-wheeler driver did, right?
> A. Okay.
> Q. That is what that means, right?
> A. Yes.
> …
> Q. Had they not pulled out in the lanes of travel without making sure it was clear of approaching traffic, again, could have prevented this from happening, correct?

10

A.    Yes. Yes.

*5 RR 275-76.*

2. *Westfreight misunderstands "but for" and "substantial factor" analysis*

Westfreight's argument that Heuston, Rodriguez, and the Estate of Garza

applied an incorrect standard or definition of causation is also wrong.

"But for causation" and "substantial factor" analysis are just two ways to

describe the cause-in-fact element of proximate cause:

> The components of proximate cause are cause in fact and foreseeability.
> ... Cause in fact is essentially but-for causation. In other words, a
> tortious act is a cause in fact if serves as "a substantial factor in causing
> the injury and without which the injury would not have occurred."

*Ryder Integrated Logistics, Inc. v. Fayette County*, --- S.W.3d ----, No. 13-0968,

2015 WL 496303, at *4 (Tex. Feb. 6, 2015) (quoting *Del Lago Partners, Inc. v.*

*Smith*, 307 S.W.3d 762, 774 (Tex. 2010), and citing *W. Invs., Inc. v. Urena*, 162

S.W.3d 547, 551 (Tex. 2005)).

"But for" and "substantial factor" are overlapping concepts that yield the same

result in routine cases, such as this, and substantial factor analysis is simply a more

general standard allowed when a claimant cannot show strict "but for" causation:

> As we attempt to clarify, "but for" and "substantial factor" are
> overlapping concepts and, to the extent they embody different tests,
> application of those tests usually lead to the same result. … We have
> often recognized but for causation, alone or in combination with
> substantial factor causation, as the standard for establishing causation
> in fact. … Nor is there anything unusual in our recognizing but for

11

causation as the causation standard in tort cases. The Restatement Second of Torts in section 431 generally recognizes that an "actor's negligent conduct is a legal cause of harm to another if [] his conduct is a substantial factor in bringing about the harm." … The Restatement Third of Torts likewise embraces but for causation as the general causation standard in tort cases. Section 26 of the subtitle on Liability for Physical and Emotional Harm provides: "Tortious conduct must be a factual cause of harm for liability to be imposed. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct." The Restatement Third not only embraces but for causation, but includes some criticism of the substantial factor test….However, we follow *Flores* and conclude that in products liability cases where the plaintiff was exposed to multiple sources of asbestos, substantial factor causation is the appropriate basic standard of causation without including as a separate requirement that the plaintiff meet a strict but for causation test. … Again, our approach did not break new ground. While but for causation is a core concept in tort law, it yields to the more general substantial factor causation in situations where proof of but for causation is not practically possible or such proof otherwise should not be required.

*Bostic v. Georgia-Pacific Corp.*, 439 S.W.3d 332, 342-44 (Tex. 2014) (footnotes to citations omitted).

Westfreight's own witnesses admitted "but for" causation linking the negligent acts of Westfreight's driver and its spotter:

> Q. Is it negligent for these gentlemen not to be looking for approaching motorists on the roadway that night?
> A. It would be negligent of them not to follow a recommended procedure of watching, look out around – in and around – front of, back, side of the vehicle.
> Q. Okay. And they didn't do that, correct?
> A. Not to my satisfaction, no, sir.
> Q. Okay. And *that would be negligent* for them not to, right?
> A. *I'm afraid it would be*.
> …

Q.  [U]nder that federal regulation, preventable accident on the part of a motor carrier means an accident that involves a commercial motor vehicle that could have been averted **but for** an act or failure to act by the motor carrier or the driver. … Do you agree that under that definition this is a preventable accident, right?

A.  *Yes*.

…

Q.  Preventable accident under that means it could have been prevented **but for** something that the 18-wheeler driver did, right?

A.  Okay.

Q.  That is what that means, right?

A.  Yes.

…

Q.  Had they not pulled out in the lanes of travel without making sure it was clear of approaching traffic, again, could have prevented this from happening, correct?

A.  Yes. Yes.

*5 RR 203-04, 274-76.*    Westfreight is mistaken when it argues that there is no evidence of causation despite its own admissions that "but for" the negligent conduct of Westfreight's driver and spotter, the preventable crash would not have happened.

### *3. Proof of foreseeability and reckless disregard of foreseen dangers*

As mentioned above, the two elements of proximate cause are "cause in fact and foreseeability."    *Ryder Integrated Logistics*, --- S.W.3d ----, 2015 WL 496303, at *4.    Just like the ample evidence of cause in fact, the evidence of foreseeability is also clear:

Q.  Can you think of any reason why if someone who's pulling off of the right-hand shoulder into the right-hand lane of travel ends up in the middle of the road?

A.  No. That would be a – a negligent thing to do because it's

13

certainly a ***foreseeable*** hazard to pull out in a slow-moving truck and to block those lanes.

Q. Can you think of any reason why an 18-wheeler pulling off of the right-hand shoulder into a lane of travel should be pulling in front of an approaching motorist?

A. No. Because a truck driver is ***aware*** … that he's not driving a Ninja motorcycle that can get up to the speed limit in a couple of seconds. He ***knows*** it's going to be a very slow-moving vehicle. And so what … he's doing if he does do that, move from the shoulder onto the travel lane, is he's putting 100 percent of the avoidance on the other person, taking no responsibility himself.

*4 RR 81-82* (emphasis added). These risks are dangers "that all trucking companies are aware of and should be aware of" because these risks are "something that's taught in all the documents related to safety." *4 RR 147.*

More than mere foreseeability, the record contains further evidence that the Westfreight driver knew of the risks and recklessly disregarded them (which is testimony that meets and far surpasses the foreseeability threshold):

Q. Would you agree when we're talking about backing out onto a highway, if there is traffic on that highway, that that is something that ***involves an extreme degree of risk***?

A. With highway – or with traffic on the road, ***yes***.

Q. Okay. And when I mean – when I say traffic, I'm not talking about it's rush hour. I'm talking about the road is being traveled, there are people on the roadway, a vehicle might come upon you?

A. Correct.

Q. Okay. ***That involves an extreme degree of risk***, correct?

A. To an extent, ***yes***.

…

Q. And ***you had <u>awareness</u> of that risk*** at that time, correct?

A. ***Yes***.

…

14

> Q. *Notwithstanding the fact that you were <u>consciously aware</u> of that risk, you chose to back out on the highway; is that correct*?
> A. *Correct*.

*5 RR 187-88* (emphasis added); *see also 5 RR 40-41, 57-58.*

## C. <u>Westfreigh reduced Garza's ability to perceive the intrusion into her lane</u>

The jury heard testimony that "the Government of the United States" requires "retroreflective tape on" trucks "to improve the safety for trailers that find themselves across the road at night." *6 RR 88.* Specifically, the Code of Federal Regulations provides that trucks cannot be driven if their reflective tape has become obscured by dirt:

> No commercial motor vehicle shall be driven when any of the lamps or reflective devices/material required by subpart B of part 393 of this title are obscured by the tailboard, or by any part of the load or its covering, by dirt, or other added vehicle or work equipment or otherwise.

49 CFR § 392.33(a).

In this case, there was photographic proof that much of the reflective tape was obscured by its placement behind the tires and placed where the tape would not be visible from an angle. *4 RR 224-25.* In addition, the reflective tape and lights on the truck were inspected shortly after the crash, and – as part of this inspection – photographs of the tape and lights at the inspection were compared to photographs of the reflective tape and lights taken right after the crash. *4 RR 230-31.* The jurors were provided with an opportunity to assess these photographs for themselves.

15

*4 RR 229-31; Ex. 184; Ex. 184-A; Ex. 253.* The lights were dirty, and the reflective tape was so obscured that it was of negligible efficacy. *4 RR 234-42; Ex. 269.*

Proof that a truck has dirt obscuring the reflective tape explains why an approaching driver may see part of the tractor-trailer in one lane but not see the non-reflective remainder of the tractor-trailer in the other lane:

> The regulation provides that reflective material shall not be obscured by dirt or otherwise. 49 C.F.R. § 392.33(a). It can be said that the regulation supplies a particular standard of conduct for an existing common law duty. In other words, the jury could still consider the violation of Section 392.33 as evidence of negligence, because the jury could have found that a reasonable person of ordinary sensibilities, under the circumstances of this case, would have ensured that the reflective taping was not obscured by chicken feces. … The evidence, as described above, showed that Burnett saw the cab portion of the tractor-trailer and was focused on its lights. He testified that he did not see that the trailer occupied his lane until just prior to impact, because he did not see any reflective material.

*Pilgrim's Pride Corp. v. Burnett*, No. 12–10–00037–CV, 2012 WL 381714, at *12 (Tex. App.-Tyler Feb. 3, 2012, no pet.) (mem. op.); *Orren v. BWF Corp.*, NO. CA2013-11-112, 2015 WL 135365, 2015-Ohio-62 (Ohio App. 12 Dist. Jan 12, 2015) ("dirt obscured much of the back of the truck, including the … reflective conspicuity tape that had been placed on the back of the truck").

Moreover, Westfreight's spotter admittedly had a flashlight and a safety vest with reflective tape as well as reflective coveralls, but Johnston chose not to use the flashlight or to wear either the safety vest or the reflective coveralls when spotting

that night. *5 RR 37-39.* The spotter further admitted that his conduct put the

public and Janie Garza at grave risk:

> Q. The night that you stepped out here, you didn't just put Ms. Garza and other people at risk, you put yourself at risk, didn't you?
> A. Yes, sir.
> Q. And that was an unnecessary risk, wasn't it?
> A. Yes, sir.
> Q. There were better ways to do this?
> A. Yes, sir.
> …
> Q. It's not reasonably prudent, is it?
> A. No, sir.
> Q. It puts not only yourself, but it puts the motoring public in grave danger, doesn't it?
> A. Yes.

*5 RR 40-41, 57-58.* Westfreight's trucking safety expert admitted the spotter was

unable to alert oncoming traffic because of his decision not to use his flashlight or

reflective safety gear:

> Q. While they're blindsiding the 18-wheeler out onto the darkened highway in Alice, Texas, what is Mr. Johnston doing?
> A. He's acting as a spotter at the left rear of the – of the commercial – the tractor-trailer.
> …
> Q. What the heck is he going to do if a car is coming? What … would you recommend that fellow to do in the roadway?
> A. Continue to stand off to the side and wave his arms the best he can.
> Q. Wave his arms in the dark?
> A. But get – try to get out of the way as best he can.
> …
> Q. In terms of warning approaching traffic, what in the world can this guy do standing out here?
> A. Without a flashlight, he couldn't accomplish much.

17

Q. Okay. He can't do anything to warn approaching motorists standing out in a darkened highway without a flashlight or reflective gear. Fair?

A. That's correct.

Q. Okay. And when I say warn approaching motorists, I'm saying trying to get the attention of approaching motorists to let them know there's an 18-wheeler in the roadway. He can't do that if he's not got a flashlight, right?

A. He can't do it.

Q. Do you even understand that that was part of his intention for being out there was to warn approaching motorists?

A. Yes, sir.

Q. Is that your understanding?

A. Yes, sir.

Q. Okay. Well – so, we've got a guy who's a part of an 18-wheeler team. He's out on the highway by his own claim, in part, to warn approaching motorists and he's doing it in a way that you, an 18-wheeler expert, says you cannot warn approaching motorists, right?

A. He – he wouldn't be very effective, no.

Q. All right. Does that give you any qualms at all about generally how safely these guys were behaving?

A. They weren't following a – a recommended procedure for the spotter to – to do.

*5 RR 193-94.*

Westfreight's complaints that Janie Garza should have seen the truck blocking both lanes on a dark night "is reminiscent of the tale of the child who, having murdered its parents, asks mercy as an orphan." *See VTech Holdings Ltd. v. PriceWaterhouseCoopers LLP*, 348 F.Supp.2d 255, 265 (S.D.N.Y. 2004).

## D. **Westfreight's complaints about expert methodology were not preserved**

Westfreight complains on appeal about the methodology and foundational

data used to test the reflectivity of the safety tape on the Westfreight trailer. Yet "an objection is required … when a challenge to expert testimony questions the underlying methodology, technique, or foundational data used by the witness" because a "challenge to the reliability of a scientific process or technique, for example, must be timely made in order to allow the court to exercise its gatekeeper function." *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.,* 136 S.W.3d 227, 229 (Tex. 2004). "An objection is required to give the proponent a fair opportunity to cure any deficit and thus prevent trial by ambush." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816-17 (Tex. 2009)

Realizing that Westfreight failed to raise these objections in the trial court, Westfreight now tries to characterize these unpreserved appellate complaints as objections to the conclusory nature of the expert testimony.

A conclusory expert opinion, which may be attacked for the first time on appeal, is testimony where "no basis for the opinion is offered, or the basis offered provides no support." *City of San Antonio*, 284 S.W.3d at 818. As succinctly explained by the Texas Supreme Court, an expert's opinion is conclusory where the expert simply asks the jury to "take my word for it." *Arkoma Basin Exploration Co. v. FMF Assoc. 1990–A, Ltd.*, 249 S.W.3d 380, 388 (Tex. 2008) (quoting *Burrow v. Arce*, 997 S.W.2d 229, 236 (Tex. 1999)); *see also Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 591-92 (Tex. 1999) (expert testimony where "there is more to the

19

evidence than an expert's bald assertion" is "more than a scintilla of evidence").

Westfreight complains on appeal that that the expert should not have relied on two studies about reflective tape and should have tested the amount of light emitted from the dirt encrusted lights on the trailer in addition to testing the reflective tape. *Westfreight Br. pp. 21, 23-25, 27-30.* These are complaints about the expert's methodology and foundational data, and Westfreight offered neither any evidence at trial nor any objection at trial to support this appellate-counsel-invented methodology. "A litigant that wants a court of appeals to set aside a district judge's decision to admit expert testimony has to do more than appeal to a lawyer's sense of how science should be done." *Formosa Plastics Corp., USA v. Kajima Intn'l, Inc.*, 216 S.W.3d 436, 452 n. 4 (Tex. App.-Corpus Christi 2006, pet. denied).

## E. **Heuston and Rodriguez preserved and fully briefed their cross-point**

"Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver," and – accordingly – "appellate courts should reach the merits of an appeal whenever reasonably possible." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008). An appellant meets "its briefing obligations" with "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) (quoting Tex. R. App. P. 38.1(i)).

Heuston and Rodriguez cited four cases regarding the Court's standards for conducting a factual sufficiency review, including the leading case applying this standard to the review of the jury's apportionment finding, as well a fifth case that discussed the Court's authority to consider the interests of justice: *Daven Corp. v. Tarh E & P Holdings, L.P.*, 441 S.W.3d 770, 776 (Tex. App.-San Antonio 2014, pet. filed); *Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 690–91 (Tex. App.-San Antonio 2012, no pet.); *Ingham v. O'Block*, 351 S.W.3d 96, 100 (Tex. App.-San Antonio 2011, pet. denied); *Jackson v. Williams Bros. Constr. Co.*, 364 S.W.3d 317, 325 (Tex. App.-Houston [1st Dist.] 2011, pet. denied); *Royce Homes, L.P. v. Humphrey*, 244 S.W.3d 570, 582 (Tex. App.-Beaumont 2008, pet. denied).

Heuston and Rodriguez provided record citations to Westfreight's efforts to coach specific exculpatory testimony from a key witness who is Westfreight's employee, *5 RR 103*, and record citations to the jury's apportionment finding, *CR 557*, and to both sides' trial court papers disputing the basis for the jury's apportionment finding: *CR 581, 587, 594*. All of this specific briefing was offered in the context of a 49-page brief with a very detailed summary of the record supported by record citations. Westfreight's argument that this issue is waived due to inadequate briefing is frivolous.

21

## IV.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Heuston, Rodriguez, and the Garza Estate pray for this Court (1) to deny Westfreight's legal sufficiency challenge and (2) to remand this case for a new trial of their claims against Westfreight and Bailey and (3) for such other and further relief as may be justly awarded in light of the circumstances set forth above.

Respectfully submitted,

BY: /s/ John Blaise Gsanger
John Blaise Gsanger
SBN: 00786662
David T. Bright
SBN: 02991490

**THE EDWARDS LAW FIRM**
802 N. Carancahua, Suite 1400
Corpus Christi, TX 78401
Tel: (361) 698-7600
Fax: (361) 698-7614
jgsanger@edwardsfirm.com

David T. Bright
SBN: 02991490
**SICO, WHITE, HOELSCHER, HARRIS & BRAUGH, LLP**
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Tel: (361) 653-3300
Fax: (361) 653-3333

**ATTORNEYS FOR APPELLANT JOHN MICHAEL HEUSTON, ET AL.**

22

## V. CERTIFICATE OF COMPLIANCE AND SERVICE

The undersigned attorney, as one of the attorneys of record, hereby certifies that the above and foregoing brief, contains 5,656 words according to the word count of the computer program used to prepare this document and that this brief has been served upon counsel of record as indicated below by the method of service indicated below on this 9th day of February, 2015.

/s/ John Blaise Gsanger
John Blaise Gsanger

*Via e-mail to*
[brian.miller@roystonlaw.com](mailto:brian.miller@roystonlaw.com)
[chris.lowrance@roystonlaw.com](mailto:chris.lowrance@roystonlaw.com)
Brian Miller
Christopher Lowrance
**ROYSTON, RAYZOR, VICKERY**
**& WILLIAMS, LLP**
802 N. Carancahua, Suite 1300
Corpus Christi, Texas 78401
*Counsel for Appellant Westfreight System Inc.*

*Via e-mail to*
[khood@fabregahood.com](mailto:khood@fabregahood.com)
Kevin L. Hood
**FABREGA HOOD LLP**
1800 St. James Pl., Suite 304
Houston, Texas 77056
*Counsel for additional trial court defendant*
*National Oilwell Varco LP*

*Via e-mail to*
[crkeener@aol.com](mailto:crkeener@aol.com)

23

Craig R. Keener
**CRAIG R. KEENER PC**
1005 Heights Blvd.
Houston, Texas 77092
*Counsel for additional trial court defendant*
*National Oilwell Varco LP*